**LAYMON, Plaintiff-Appellee, v. BENNETT, Defendants-Appellants.**

Ohio Appeals, First District, Butler County

No. 889. Decided December 22, 1944.

562

 

Mr. H. L. Dell, Middletown, and Mr. C. W. Elliott, Middletown, for appellee.

Mr. Clinton D. Boyd, Middletown, for appellants.

## OPINION

By MATTHEWS, J.

The trial court found in favor of the plaintiff on both causes of action stated in the petition and entered judgment on such finding. The defendants filed notice of appeal on law and fact and gave an appeal bond. The first cause of action is clearly one at law, but the second cause of action is as clearly a chancery case. The appeal, therefore, vests this court with jurisdiction to hear this case de novo and imposes upon it the duty, if necessary, of hearing and weighing the evidence as to the second cause of action, uninfluenced by the decision of the issues by the trial court upon such of the evidence as was before that court.

(1) The only relief sought on the first cause of action is the possession of certain described real estate and an accounting of the rents. The plaintiff predicated her right on the averment that the legal title was transmitted to her upon the death of Charlotte Zeidler, both by reason of the fact that she was the only child and heir-at-law of Charlotte Zeidler and also by the terms of the will of the said Charlotte Zeidler. It is conceded that the plaintiff is the only child and heir-at-law of Charlotte Zeidler and that if Charlotte Zeidler owned any title to this real estate at the time of her death, it devolved upon the plaintiff both by reason of the relationship and the terms of her will.

But while the plaintiff alleged in her first cause of action that she acquired the legal title as aforesaid and was entitled to the immediate possession, she also alleged a contract that the said Charlotte Zeidler entered into with the defendants, Ferris E. Bennett and Mattie L. Bennett in relation to said real estate and a deed which she executed and delivered to

them in her lifetime. In her first cause of action the plaintiff alleged as a conclusion of law that this contract only provided for a transfer of an estate for the life of Charlotte Zeidler and that the deed only conveyed such a life estate and that upon her death the title devolved upon the plaintiff for the reasons already stated. The defendants place a different construction upon the contract and deed. They contend that the contract provided for the conveyance of a fee simple title and that the deed conveyed a fee simple title. It is necessary to examine and construe these documents, as pleaded.

By the agreement, Charlotte Zeidler agreed "To execute a deed of general warranty excepting taxes," conveying the premises in consideration of the agreement of the defendants, Ferris E. Bennett and Mattie L. Bennett, to pay $200.00, cash in hand, and also to pay $20.00 per month "so long as" Charlotte Zeidler "shall live" and the further agreement "to provide a home, furnish board and room and allow her to enjoy said premises as a home for the remainder of her life." The agreement contained this further provision:

"The decease of said second party without filing an action in Common Pleas Court of Butler County, Ohio, against said first parties on a claim growing out of this agreement, shall be deemed full satisfaction of this agreement by said party of the first part and full compliance therewith, and parties of the first part shall thereupon enjoy an absolute and unconditional title in fee simple to said premises."

The deed was executed immediately thereafter. It is on the standard form of general warranty deeds with modification to conform to the special case. In the granting clause, the title was conveyed to Ferris E. Bennett and Mattie L. Bennett "their heirs and assigns." The printed word "forever" was cancelled, and following the description we find the following: "so long as said grantees comply with the promises and provisions on their part contained in the agreement executed of even date, of which the following is a copy:" Then came an exact copy of the agreement in quotations and the sentence was ended with the words "and no longer." The habendum clause was: "To have and to hold the same to the only proper use of the said Ferris E. Bennett and Mattie L. Bennett, their heirs and assigns so long as said grantees comply with the promises and provisions of said agreement on their part to be performed." This was followed by covenants

of general warranty, excepting the taxes and assessments.

The deed was duly recorded.

There was no allegation that the defendants failed to comply with their agreement in any respect.

That the grantor intended to convey some estate cannot be denied. And in view of §8510-1, GC, he was not limited to any set phrase in expressing that intention. Whatever language she chose to use, would convey the title she had in the described real estate "unless it clearly appears by the deed, ———that the grantor intended to convey———a less estate." **Section 8510-1, GC.**

In this case there is no doubt about the estate intended to be conveyed—the estate designated in the contract. Incorporating the entire contract into the deed, certainly carried that intent with it. Unless the contract is so vague on that subject as to be unenforceable, the deed has the effect of transferring the title for which the defendants contractd.

In **40 Oh Jur., 977,** it is said that when the language of the contract indicates either expressly or impliedly the kind of title to be conveyed "the vendor is obligated to convey a 'marketable' title————and the title is to be an estate in fee simple in such property unless some other estate is expressly designated." See, also: 27 R. C. L. 485, et seq. Measured by this rule, the provision of the contract by which Charlotte Zeidler agreed to execute a "deed of general warranty ————conveying the following described premises" was sufficient to bind her to convey her entire estate without any additional words indicating the intent of the parties. Indeed the modern rule is that such language would require the transfer of a marketable title in fee simple. Id.

But there are other words that leave no possible doubt as to the quantum of the estate that the defendants were to receive from Charlotte Zeidler. The part of the agreement quoted above ends—"And said parties of the first part shall, thereupon, enjoy an absolute and unconditional title in fee simple to said premises." In other words, if they performed their agreement they were to have an absolute fee simple title. We can think of no clearer language in which to express the intent of the parties. In the presence of such language, rules of construction serve no purpose. Charlotte Zeidler had agreed to execute the deed and it was executed to convey the estate contracted to be conveyed as required by law. It could have no other purpose.

We think this agreement not only does not clearly show an intent to convey less than Charlotte Zeidler's entire title

(which §8510-1, GC, requires in order to so limit it) but clearly shows an intent to convey her entire estate. Only the existence of some iron rule requiring the use of some words of art, such as "heirs" which was abolished by §8510-1, GC, would justify the Court in disregarding this positive declaration of the intent.

We are not considering here the language of a testamentary gift or a gift by deed. This is contractual language creating contract rights inter vivos, enforceable by actions at law and suits in equity. After this contract was signed, neither had the right to withdraw. Charlotte Zeidler had no right in her lifetime by unilateral action to change the relation established by the contract. Rights had been created. If the defendants fully performed and Charlotte Zeidler refused to execute the deed when the time for doing so arrived, they could have compelled her to specifically perform, and the cause of action would have survived her death.

Our conclusion is, that the facts pleaded in the first cause of action show that the pleader's legal conclusion that the plaintiff was the owner and entitled to the immediate possession cannot be drawn from the pleaded facts. It is clear that so long as the deed, the terms of which are pleaded in the first cause of action, remains, it presents a complete bar to the action to recover possession. That conclusion brings us to a consideration of the appeal on law and fact from the decree, setting the contract and deed aside, based on the second cause of action.

(2) The relief sought on the second cause of action beyond that sought on the first cause of action was a declaration that the contract and deed were null and void and conveyed no interest on the ground that Charlotte Zeidler "was incapable of executing the same, that their execution was procured by undue influence, that their terms were unconscionable, and that it may cancel and rescind said instruments."

To obtain a decree setting aside and holding for naught a formal written document, such as a deed, a higher degree of proof is required than a bare preponderance which would be sufficient in an action for the recovery of money. Whether the ground asserted for setting aside the formal written instrument be lack of capacity, fraud or undue influence, the plaintiff cannot succeed unless he establishes either lack of mental capacity, fraud, or undue influence by clear and convincing evidence.

The first paragraph of the syllabus to **Willis v Baker 75 Oh St, 291,** is:

"In an action by a wife, or a guardian in her behalf, to have declared null and void a conveyance of her lands on the ground that she was induced to make such conveyance by undue influence, or on the ground that she was not conscious of her act in executing the same, and it appears from its face that it was duly executed and acknowledged in the maner and form prescribed by the statute, the burden is upon the plaintiff to establish one of said grounds by clear and convincing proof, and a mere preponderance of the evidence in its favor is not sufficient."

In **17 O. Jur., 409,** it is said:

"It is settled in Ohio, as indicated by repeated decisions of both the supreme and the lower courts, that written instruments, especially deeds executed in conformity with the provisions of the Deeds Act, shall not be rescinded or set aside except upon proper allegations which are supported by evidence of a clear and convincing character. A mere preponderance of evidence sufficient to determine verdicts in ordinary civil actions is not sufficient. The rule has been applied in an action to have a conveyance set aside on the ground of undue influence, or want of capacity, or because the plaintiff was so intoxicated as to be deprived of the use of his faculties."

A long list of Ohio cases in support of the text is cited. See, also: **22 O. Jur., 101.**

Charlotte Zeidler was about 89 years old when she executed this contract and deed. Their terms show the purpose of executing them was to insure that she would have a home and the necessaries of life for the remainder of her life. The grantees would get nothing unless they furnished her with them. Their breach of the contract during her life would deprive them of the title to the property that had been conveyed to them, and they would lose whatever they had previously paid her. It was in no sense an improvident arrangement. There is nothing inherent in it to indicate lack of mental capacity, undue influence, or fraud.

There was no secrecy employed. The daughter was advised by the Bennetts in advance of her mother's intention to enter into this arrangement with them and undoubtedly the Bennetts surrounded the execution of the instruments with many incidents to make it, or appear to make it, her deliberate and uninfluenced act. And the plaintiff now cites those precautions as evidence of lack of capacity and undue

influence. Undoubtedly, they show a consciousness that the action might be challenged. On this record, we are unable to conclude that they show anything more. They were dealing with an old woman, but old age does not create a legal ostracism. It is not necessary to attribute unworthy motives in order to conclude that a person dealing with her would proceed with circumspection and make sure that what was done would be in her interest. In this case, the terms of the contract were beneficial to her. It insured to her maintenance for the rest of her life without the sacrifice of title to any property except on that condition. We find nothing in the contract that would cause us to attach a sinister motive to the precautions taken.

We have read and weighed all the evidence in this case to discover whether the plaintiff had sustained the burden of proving by clear and convincing evidence that undue influence or fraud had been practiced. Much of the effort to prove fraud and undue influence was directed to proving the conduct of various persons other than the defendants in their relation to Charlotte Zeidler. As to such persons, the evidence fails to convince us of fraud or undue influence—and the record is almost, if not quite, barren of evidence that such persons were acting in concert with the defendant. Without such evidence, their conduct could not be a basis for invalidating the contract between these parties. **In 19 Ohio Jur.,** it is said:

"But there is no authority for the doctrine that an innocent party to a contract supported by a consideration moving from himself shall be deprived of its advantages because of the fraud of another with whom he is not in privity."

Upon the subject of mental capacity, many witnesses testified. Several gave it as their opinion that Charlotte Zeidler was of unsound mind. There was some evidence of what seemed to be eccentric action on her part to serve as a predicate for that opinion. The plaintiff, however, did not express a positive opinion. There was a greater number of witnesses with equal or greater opportunity to judge of her mental condition who testified that she was of sound mind. And it is significant that during all this time she was transacting the day-by-day business transaction incident to conducting a home, and, in addition, made an arrangement for her burial, and made a will sometime after executing this deed, and this will was probated with the plaintiff's consent.

At the time, nor at any time during Charlotte Zeidler's life did any one question her mental capacity. It was only after her death that the claim was made notwithstanding the plaintiff knew of all the facts and could have moved to prevent the consummation of the transaction by the appointment of a guardian. The most probative item of evidence in favor of the plantiff is the age of Charlotte Zeidler at the time, but as against that there is abundant evidence that in spite of her age, she had ample capacity to contract.

As to the standard of capacity, we quote from 28 Am. Jur., 701:

"Of course, not every substandard mentality or even every mental infirmity has the effect of rendering the afflicted person disabled for the purpose of entering into contracts and making conveyances. The law does not presume to make a distinction between much and little intellect, so far as contractual capacity is concerned, or to require a full appreciation, by a party thereto, of all the technical intricacies of a transaction, as a condition requisite to the validity of the contract or deed executed therein, although it may take mental weakness into account in determining whether undue influence or fraud has been perpetrated."

And upon the significance of old age, the same authority says at 702: "Neither old age, nor failing health constitutes in itself incapacity to execute a deed or enter into a valid contractual obligation." And, upon eccentricity, at page 703, it is stated:

"Mere eccentricity or abnormality in personality or conduct is of common occurrence and, while frequently confused with insanity or incompetency, does not affect the validity of a contract, or of a conveyance of real property. Even partial insanity will not render a contract voidable unless it exists in connection with or is referable to the subject matter of the contract. Similarly, a delusion, if unconnected with the transaction in question, is not sufficient to affect the validity of a contract consummated by the person thus affected."

See, also: **9 O. Jur., 249.**

Our conclusion is, that the plaintiff has failed to sustain the burden of proving by clear and convincing evidence that Charlotte Zeidler lacked the capacity to contract required by law.

For these reasons, the court finds generally on the issues joined in favor of the defendants and a decree may be presented in accordance with this finding.

ROSS, P. J., HILDEBRANT and MATTHEWS, JJ., concur in syllabi and opinion.