**AUGENSTEIN et al.**

v.

**AUGENSTEIN et al.** ■

Court of Common Pleas of Ohio,
Marion County.

No. 97 CV 0270.

Decided Feb. 2, 2000.

46

*Ted M. McKinniss,* for plaintiffs.

*Robert E. Wilson,* for defendants.

RICHARD M. ROGERS, Judge.

I. Prologue

This matter came on for trial to the bench on the complaint of the plaintiff, Earl R. Augenstein, the complaint of the intervenor, Eleanor Augenstein, and the answer of the defendants. The original complaint was filed by Earl R. Augenstein, father of the defendants, alleging that two quitclaim deeds executed by him on February 20, 1996 were procured by fraud, and requesting that the deeds be

declared void. The plaintiff, Earl R. Augenstein, died on November 11, 1997. The surviving spouse of Earl R. Augenstein, Eleanor Augenstein, moved for leave to intervene in the action, which was allowed. On December 10, 1998, the parties filed a stipulation that the judgment of this court would apply equally to the estate of Earl R. Augenstein and to Eleanor Augenstein.

The facts demonstrate that the decedent, Earl R. Augenstein, entered a nursing home in January 1995. At that time, he still owned approximately one hundred sixty acres of land that had been in the family for many years. Earl's previous spouse, the mother of the three defendants, John Augenstein, Marilyn Trefz, and Jim Augenstein, died in 1994. During his stay in the nursing home, the defendants managed Earl's farm in conjunction with Jim's farm on adjoining acreage. Jim's wife, Jackie, acting through a power of attorney, had been paying all of Earl's bills from Earl's checking account, even prior to his entering the nursing home. After Earl entered the nursing home, a divorce action was filed between Jackie and Jim, and Jim moved into the house on Earl's farm. The power of attorney was later granted to John Augenstein. During his stay in the nursing home, Earl became acquainted with Eleanor Chapman, now known as Eleanor Augenstein, the intervening plaintiff.

In February 1996, Earl R. Augenstein executed two documents that purported to transfer his one-hundred-sixty-acre farm to his three children, John, Marilyn, and Jim, reserving a life estate for himself. In March 1996, Earl left the nursing home and took up residence with Eleanor, and they were married soon thereafter. At the time that Earl left the nursing home, Jim was still in Earl's house with the divorce pending. Jim soon moved out of Earl's house, and Earl and Eleanor moved in.

The death of Earl has created a question of entitlement in his estate, and, specifically, the contested interests in the real property. Should the plaintiffs be successful in this action, Eleanor would be entitled to share in Earl's estate, which would then include the contested real estate. Accordingly, during the pendency of this action, Eleanor asked for and received a preliminary injunction, prohibiting John, Marilyn, and Jim from interfering with her use of the farmhouse. Jim has continued to farm the tillable acreage, although not without friction between the parties.

The complaint was stated in terms of fraud and asked that two quitclaim deeds, which purported to convey the farm of Earl R. Augenstein to "himself, Earl R. Augenstein, for the remainder of his natural life, remainder equally to his children, James G. Augenstein, John R. Augenstein, and Marilyn K. Trefz," the defendants, be held invalid. The allegations of the complaint of Eleanor Augenstein were essentially the same.

At trial, the plaintiffs attacked the deeds in question on two fronts. First, the plaintiffs alleged that the language utilized in the deeds was inadequate to convey an immediate fee simple interest in the real property. While this issue was not included in the pleadings, all parties addressed the issue, and the court finds that the issue was tried by mutual consent.

Second, the plaintiffs contended that the defendants exerted undue influence on the decedent, Earl R. Augenstein, and also engaged in fraud to persuade Earl to sign the deeds. If plaintiffs were to succeed on the first issue, the second would be rendered moot. Therefore, the court will first consider the adequacy of the questioned deeds.

## II. The deeds

### A. *Arguments*

The plaintiffs presented expert testimony from Mark Sinkhorn, an attorney who is employed by Lawyer's Title and who regularly passes on the sufficiency of deeds for purposes of issuing title insurance. Sinkhorn questioned the validity of the deeds, specifically, the unusual language employed in the deeds. He was not convinced that the deeds made a "present conveyance out." He was distressed by the "atypical form," the absence of the use of terms such as "heirs," and stated that the document "does not express intention clearly." Sinkhorn acknowledged that R.C. 5302.18 provides for creating an interest in oneself, but felt that the statute was inapplicable in this situation. He was also unhappy with the questions that would be created if one of the named children/grantees predeceased the grantor. However, it is significant to note that Sinkhorn would not say that the document was void.

The defendants countered with the expert testimony of Michael Braunstein, a Professor of Law at Ohio State University since 1986. Professor Braunstein opined that preparation of a deed is largely a matter of the intention of the grantor. He did say that he was not familiar with the traditional language in Ohio practice. However, in commenting on Sinkhorn's opinion, he stated that lawyers tend to be conservative, especially in real property matters. He concluded that the deeds at issue clearly expressed the grantor's intention, granting a "right to possession, and control, and upon your death it passes to your children." In his opinion, this language is consistent with a current intention to transfer. He further stated that "intent is important in construing the deed," and that the "intent expressed by the document should control." He further relied on R.C. 5302.18, which states: "A deed in which a grantor is also a grantee is effective to convey the interest in the title of the grantor or grantors to all of the grantees in the proportion and manner indicated in the deed."

B. *Findings*

The court finds that the deeds are sufficient for the purposes intended, that is, to convey the subject properties to James G. Augenstein, John R. Augenstein, and Marilyn K. Trefz, while reserving a life estate to Earl R. Augenstein. Ohio does not require the use of specific language to convey property. R.C. 5301.02. If the intent is clear, and the deed is properly executed, it is sufficient to convey the property. See *Laymon v. Bennett* (1944), 75 Ohio App. 233, 42 Ohio Law Abs. 561, 30 O.O. 581, 61 N.E.2d 624.

The intent in the subject deeds is clear and unambiguous. Although certain circumstances could have created problems for the remaindermen, and while such considerations might be important to one who guarantees the title, those matters are not at issue in this case. "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 7 O.O.3d 403, 374 N.E.2d 146, paragraph two of the syllabus; see, also, *Aultman Hosp. Assn. v. Community Mut. Ins. Co.* (1989), 46 Ohio St.3d 51, 54, 544 N.E.2d 920, 923.

Further, even if the language in the deeds were to be considered ambiguous, the language is capable of interpretation in a reasonable manner, that is, conveying the properties to the three children while reserving a life estate in Earl. "[W]here an instrument is ambiguous or indefinite in its terms, and admits of two constructions, one of which renders it inoperative and void, and the other operative and valid, the latter is to be adopted in preference to the former." *Hoffman, Burneston & Co. v. Mackall* (1855), 5 Ohio St. 124, 132. "A court will favor construction of a deed so as to render it operative and valid, rather than adopting a construction which would make it void." *Blevins v. King* (Aug. 19, 1985), Butler App. No. CA 84–10–121, unreported, 1985 WL 7707, at * 2, citing *Hoffman, Burneston & Co. v. Mackall.*

Accordingly, the court finds that the deeds are valid transfers of the subject real property.

III. Fraud and undue influence

A. *Elements of fraud and undue influence*

The elements of an action in actual fraud are "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Russ v. TRW, Inc.* (1991),

59 Ohio St.3d 42, 49, 570 N.E.2d 1076, 1083; *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709, 712; *Burr v. Stark Cty. Bd. of Commrs.* (1986), 23 Ohio St.3d 69, 23 OBR 200, 491 N.E.2d 1101, paragraph two of the syllabus; *Cohen v. Lamko, Inc.* (1984), 10 Ohio St.3d 167, 169, 10 OBR 500, 502, 462 N.E.2d 407, 409.

A finding of undue influence requires " '(1) a susceptible [grantor], (2) another's opportunity to exert [undue influence], (3) the fact of improper influence exerted or attempted and (4) the result showing the effect of such influence.' " *Redman v. Watch Tower Bible & Tract Soc. of Pennsylvania* (1994), 69 Ohio St.3d 98, 101, 630 N.E.2d 676, 678–679, quoting *West v. Henry* (1962), 173 Ohio St. 498, 510–511, 20 O.O.2d 119, 126, 184 N.E.2d 200, 208. See, also, *Rich v. Quinn* (1983), 13 Ohio App.3d 102, 103, 13 OBR 119, 120, 468 N.E.2d 365, 367–368. "The influence must so overpower and subjugate the mind of the transferor that it destroys the transferor's free will." *Ellacott v. Ellacott* (Nov. 10, 1994), Cuyahoga App. No. 66148, unreported, 1994 WL 631189, at *4, citing *West v. Henry, supra; Henkle v. Henkle* (1991), 75 Ohio App.3d 732, 736, 600 N.E.2d 791, 794. See, also, *Doyle v. Schott* (1989), 65 Ohio App.3d 92, 95–96, 582 N.E.2d 1057, 1059–1060; *Birman v. Sproat* (1988), 47 Ohio App.3d 65, 68, 546 N.E.2d 1354, 1357; *Rich v. Quinn, supra.* See, also, *Wise v. Riddlebaugh* (May 29, 1997), Marion App. No. 9–97–6, unreported, 1997 WL 280628, at *2, citing *West,* 173 Ohio St. at 501, 20 O.O.2d at 121, 184 N.E.2d at 202, and *Krischbaum v. Dillon* (1991), 58 Ohio St.3d 58, 65, 567 N.E.2d 1291, 1298.

"Undue influence" is "[any] improper or wrongful constraint, machination, or urgency of persuasion whereby the will of a person is overpowered and he is induced to do or forbear an act which he would not do or would do if left to act freely." Black's Law Dictionary (6 Ed.1990) 1528.

B. *Burden of proof*

The plaintiffs have cited numerous cases to support their argument that once a confidential or fiduciary relationship is established between the grantor and grantee, a presumption arises that the grantee of an *inter vivos* gift has taken undue advantage of the grantor. See, *e.g., Elliott v. Nash* (Dec. 28, 1995), Cuyahoga App. No. 68575, unreported, 1995 WL 764109, at *6. See, also, *Beaver v. Redmond* (1967), 11 Ohio St.2d 182, 40 O.O.2d 166, 228 N.E.2d 609. The plaintiffs then argue, and the defendants have not disputed, that a confidential relationship, or fiduciary responsibility, existed between the defendants and their father, Earl Augenstein.

" 'A "fiduciary relationship" is one in which special confidence and trust is reposed in the integrity and fidelity of another and there is a resulting position of superiority or influence, acquired by virtue of this special trust.' " *Stone v.*

*Davis* (1981), 66 Ohio St.2d 74, 78, 20 O.O.3d 64, 66–67, 419 N.E.2d 1094, 1097–1098, quoting *In re Termination of Employment of Pratt* (1974), 40 Ohio St.2d 107, 115, 69 O.O.2d 512, 517, 321 N.E.2d 603, 609. See, also, *Haluka v. Baker* (1941), 66 Ohio App. 308, 33 Ohio Law Abs. 435, 20 O.O. 136, 34 N.E.2d 68.

 "The fiduciary's role may be assumed by formal appointment or it may rise de facto from a more informal confidential relationship, *Prudential Ins. Co. v. Eslick* (S.D.Ohio 1984), 586 F.Supp. 763; *Walters v. First Natl. Bank of Newark* (1982), 69 Ohio St.2d 677, 23 O.O.3d 547, 433 N.E.2d 608, which is a relationship in which: ' " * * * [O]ne person comes to rely on and trust another in his important affairs and the relations there involved are not necessarily legal, but may be moral, social, domestic, or merely personal. * * * " *Indermill v. United Savings* (1982), 5 Ohio App.3d 243, 245, 5 OBR 530, 532, 451 N.E.2d 538, 540.' *Applegate v. Fund for Constitutional Govt.* (1990), 70 Ohio App.3d 813, 816–817, 592 N.E.2d 878, 880–881." *Craggett v. Adell Ins. Agency* (1993), 92 Ohio App.3d 443, 451, 635 N.E.2d 1326, 1331.

The plaintiffs then cite further cases which state that the presumption created by the existence of a confidential or fiduciary relationship shifts the burden of proof to the grantee to demonstrate by clear and convincing evidence that a gift was made in "good faith," was "reasonable," and was "equitable and fair between the parties." *McCluskey v. Burroughs* (1982), 4 Ohio App.3d 182, 4 OBR 284, 446 N.E.2d 1143; *Pifer v. Estate of Mansfield* (Nov. 22, 1989), Medina App. No. 1806, unreported, 1989 WL 140623, at *2; *Meller v. Brecht* (Sept. 28, 1989), Coshocton App. No. 88–CA–34, unreported, 1989 WL 114770.

Although the existence of a confidential or fiduciary relationship between the defendants and Earl Augenstein has not been disputed, plaintiffs have over-looked, or failed to acknowledge, the effect that the formality of a deed (or a will) has on what would otherwise be characterized as an *inter vivos* gift.

 The general rule in Ohio is that when proceeding on the basis of fraud, undue influence, or a combination of the two, in an action for equitable relief, such as to set aside a written deed, a showing by clear and convincing evidence is required of the party seeking to invalidate the deed. *Household Fin. Corp. v. Altenberg* (1966), 5 Ohio St.2d 190, 34 O.O.2d 348, 214 N.E.2d 667, syllabus.

 "A deed executed in the correct form is presumed to be valid and will not be set aside except upon clear and convincing evidence." *Henkle v. Henkle,* 75 Ohio App.3d at 735, 600 N.E.2d at 793. "The presumption of validity attaching to a deed which appears upon its face to have been executed in due form can only be overcome by clear and convincing proof, and the burden of sustaining such burden of proof is on the person challenging the validity of such deed." *Weaver v. Crommes* (1959), 109 Ohio App. 470, 12 O.O.2d 15, 167 N.E.2d 661, paragraph

two of the syllabus. "Whether the ground asserted for setting aside [a] formal written instrument [such as a deed] be lack of capacity, fraud or undue influence, the plaintiff cannot succeed unless he establishe[s] either lack of mental capacity, fraud, or undue influence by clear and convincing evidence." *Laymon v. Bennett,* 75 Ohio App. at 238, 42 Ohio Law Abs. at 565, 30 O.O. at 584, 61 N.E.2d at 627. See, also, *Flynn v. McHugh* (1955), 98 Ohio App. 393, 57 O.O. 441, 129 N.E.2d 848, in which the court gave an extensive listing of early cases of this same persuasion.

The plaintiffs' own citations do not support their position. The court in *McCluskey v. Burroughs,* 4 Ohio App.3d at 182, 4 OBR at 284, 446 N.E.2d at 1144, stated, "A party seeking rescission and cancellation of a deed because of undue influence * * * has the burden of proof by clear and convincing evidence." See, also, *Elliott v. Nash, supra.* In the case of *Meller v. Brecht, supra,* the issue was an *inter vivos* gift of money, without the formality of a deed or will.

At best, the plaintiffs can argue that the presumption that arises due to a confidential relationship shifts the burden of going forward to the grantee. But this is a minimal burden, which may be met with minimal evidence.

It must first be noted that such a presumption disappears once any rebuttal evidence is presented. *Cincinnati School Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision* (1997), 78 Ohio St.3d 325, 677 N.E.2d 1197; *Ayers v. Woodard* (1957), 166 Ohio St. 138, 145, 1 O.O.2d 377, 381, 140 N.E.2d 401, 406. But, see, *Krischbaum v. Dillon,* 58 Ohio St.3d 58, 567 N.E.2d 1291, and Evid.R. 301.

Clearly then, the burden of proof remains on the plaintiffs in this case, to establish by clear and convincing evidence, that Earl Augenstein's signature on the two subject deeds was the result of fraud or undue influence.

C. *Argument*

Plaintiffs have alleged that defendants obtained Earl Augenstein's signature on the two deeds by representing to him that he was only signing papers that would prevent the nursing home from taking his farm. They further alleged that Earl was not thinking clearly and that the defendants occupied a confidential relationship or were in a fiduciary capacity, due to the parent/child relationship, and also due to their handling of Earl's financial matters and farm operations.

To support their position of fraud and undue influence, plaintiffs offered the testimony of two attorneys at law, F. Riley Hall and Kevin R. Hall, father and son, who had been contacted about the subject deeds. Riley Hall, in fact, acting as Earl's attorney, initiated this action, although he withdrew after Earl's death, in anticipation of being called as a witness.

Riley Hall's testimony was presented by deposition and indicated that Earl had consistently told him that he was not aware of the contents of the deed. Riley

Hall testified that Earl stated to him that he had been told that the papers that he was signing were intended to prevent the nursing home from taking his farm. Riley Hall further stated that Earl made him aware that he had been to two other attorneys about the deeds, but that neither attorney was helpful to him. Eleanor was present at all of Riley's meetings with Earl, but Riley observed no indication of undue influence or pressure exerted on Earl by Eleanor.

Kevin Hall testified that he was present twice during Riley's meetings with Earl and Eleanor. He testified that Earl claimed not to know what was in the deeds, and that Earl did not seem to have a good recollection of his time in the nursing home. Kevin Hall, who maintains a title insurance office, also questioned the "phrasing" of the deeds.

Defendants responded to plaintiffs' allegations by denying any false representations, and with testimony to the effect that Earl had often stated his intention to leave the family farm to the three children. Further, they presented the testimony of two attorneys to support the fact that the deeds were consistent with Earl's intentions.

The first attorney, Brent W. Yager, prepared the deeds. Although he had not previously represented Earl, he and his family had been friends of Earl's family for many years. Yager prepared the deeds pursuant to instructions received from Jim Augenstein. However, he testified that he discussed the deeds and their effect with Earl, and he was well satisfied that Earl knew the content and effect of what he was signing. He believed that a nursing supervisor was present during some of the discussions. Yager further indicated that because Earl was in a nursing home, he made specific inquiries of Earl, about the date, presidents, and current events, to be sure that Earl understood what he was doing. He stated that there was no question in his mind that Earl knew what he was doing, and what he was signing.

Perhaps even more persuasive was the testimony of attorney Robert D. Fragale. Fragale was contacted by Earl and Eleanor after Earl had executed the deeds, left the nursing home, and married Eleanor. While the testimony differed as to the initial reasons for Earl and Eleanor meeting with Fragale, it is clear that he first met with Earl and Eleanor together. At the initial meeting, Eleanor did most of the talking, and Earl and Eleanor indicated that they wanted information on the deeds. Fragale obtained the necessary information as to who had prepared the deeds and the contents, and again met with Earl and Eleanor to discuss that information. It appeared to Fragale that Earl understood everything, but that he acquiesced in Eleanor's control of the discussions. Fragale said that Earl had no reaction when told about the contents of the deeds.

Fragale then set up a meeting between Earl and his children at which Eleanor was not present, and the results of that meeting are revealing. Earl was more

talkative with the children present than with Eleanor. The children explained Earl's financial situation to Fragale. Earl was not asked about the signing of the deeds because that had not been made an issue. On the other hand, Earl did express his desire for Jim to continue the farming, and never recanted his intentions to transfer the farm. Fragale was satisfied that the transfer of the farm was consistent with Earl's intentions. However, Fragale did state that Earl did express the concern that if he did not get the farm back, Eleanor would put him back in the nursing home.

After that meeting was completed, Eleanor returned to Fragale's office to pick up Earl, and Fragale advised her of the results of the meeting. Eleanor was visibly upset. She told Earl that if he did not get the farm back, it was over between them. She left the office without Earl, and, later that day, set his belongings out of her house.

D. *Findings*

 Fraud requires a reliance on false information, coupled with an injury. Where it is demonstrated that the resulting document is consistent with the desires of the grantor, as stated both prior to and after the execution, there is no injury. Undue influence likewise requires a result showing the effect of the influence. Where, as here, the grantor has stated his desires, both prior to and after executing the deeds, and those desires were consistent with the result, undue influence has not been shown.

 "The law applicable to such a condition of facts should be perfectly clear. Whatever presumption of fraud arising out of confidential relations may be raised, it necessarily is rebutted when it is shown that the instrument is in exact accord with the grantor's declarations, made both before and after its execution." *McAdams v. McAdams* (1909), 80 Ohio St. 232, 240, 88 N.E. 542, 544.

 Further, "[d]eclarations of the grantor, made in the absence of the grantee, are not competent evidence to prove the alleged fraud; but statements of the grantor which tend to rebut the claim of fraud, whether made before or after the signing of the deed, are admissible." *McAdams,* paragraph three of the syllabus. "The general rule established by the overwhelming weight of authority, and followed by the Ohio courts, is that declarations of the testator not made contemporaneously with the execution of the will or so near thereto as to constitute a part of the *res gestae* are not admissible as substantive proof of the fact of undue influence. Annotation, 79 A.L.R. 1449; *Van Demark v. Tompkins, Exr.* [1929], 121 Ohio St. 129, 167 N.E. 370." *West v. Henry,* 173 Ohio St. at 502, 20 O.O.2d at 121, 184 N.E.2d at 202.

The court, as the trier of fact, finds that the more credible testimony negates the exercise of any undue influence or misrepresentation by defendants. The

statements of Earl Augenstein, made in the presence of attorneys Riley Hall and Kevin Hall and in the absence of the defendants, should not be considered pursuant to *West* and *Van Demark*. Further, any presumption created by the confidential relationship has been rebutted by testimony that the deeds were consistent with Earl Augenstein's long-stated intention to pass the farm to his children.

It would appear that if any undue influence was exercised against Earl Augenstein, it was by Eleanor, in an attempt to effect a return of the real property to Earl. Whether this was done because of a concern for his financial security, or for personal gain on her part, the court need not speculate.

Accordingly, the court finds that plaintiffs have failed to meet their burden of proof by clear and convincing evidence.

Judgment to be prepared accordingly by counsel for the defendants pursuant to Loc.R. V.

*So ordered.*