[Cite as *Neville v. Neville*, 2009-Ohio-3817.]

# IN THE COURT OF APPEALS OF OHIO
# THIRD APPELLATE DISTRICT
# MARION COUNTY

SUSAN NEVILLE nka GORHAM,

    PLAINTIFF-APPELLANT,          CASE NO.  9-08-37

    v.

TERRY NEVILLE,                **O P I N I O N**

    DEFENDANT-APPELLEE.

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 2008-DR-0036

**Judgment Affirmed**

Date of Decision:    August 3, 2009

APPEARANCES:

    *Darrell L. Heckman*  for Appellant

    *Kevin P. Collins*  for Appellee

**SHAW, J.**

{¶1} Plaintiff-Appellant Susan Neville ("Susan") appeals from the July 15, 2008 Judgment Entry Decree of Divorce of the Court of Common Pleas, Family Division, Marion County, Ohio.

{¶2} Susan married Terry Neville ("Terry") on June 17, 2006. Prior to the marriage, Susan had moved into Terry's residence located in Marion, Ohio. At the time they were married, Susan was employed as a school secretary and Terry owned his own farming business.

{¶3} Throughout the marriage, the common funds in the checking account held jointly by Susan and Terry were kept separate from Terry's farm accounts. Susan's paycheck was directly deposited into the joint account, and Terry made periodic transfers from the farm accounts into the joint account. Those funds, in the joint account, were used to cover living expenses. The farm business funds were kept completely separate.

{¶4} During the course of the marriage, Terry acquired several vehicles and pieces of farm equipment which were subsequently sold. The buying and selling of vehicles appeared to be a normal part of Terry's farming business. Terry also sold some property, prior to the marriage, which resulted in a balance of funds of approximately $51,000. A portion of that money was then subsequently

used to purchase a cottage at Indian Lake for $44,000 which was deeded to both Susan and Terry.

{¶5} It appears from the record that Susan left the marital residence in January of 2008. On February 13, 2008, Susan filed for divorce. Terry filed an answer on February 19, 2008 in which he admitted that the parties were incompatible.

{¶6} A hearing was held on June 18, 2008. On July 15, 2008 the trial court issued a decree of divorce.

{¶7} Susan now appeals, asserting four assignments of error.

**ASSIGNMENT OF ERROR I**
**THE TRIAL COURT ERRED IN CHARACTERIZING THE PARTIES' COTTAGE AT INDIAN LAKE AS SEPARATE PROPERTY OF APPELLEE.**

**ASSIGNMENT OF ERROR II**
**THE TRIAL COURT ERRED IN CHARACTERIZING THE APPRECIATION OF THE SEA RAY BOAT AND THE DODGE RAM TRUCK AS SEPARATE PROPERTY OF APPELLEE.**

**ASSIGNMENT OF ERROR III**
**THE TRIAL COURT ERRED IN CHARACTERIZING ALL OF THE FARM SAVINGS ACCOUNT AND FARM CHECKING ACCOUNT AS SEPARATE PROPERTY OF THE APPELLEE.**

**ASSIGNMENT OF ERROR IV**
**THE TRIAL COURT ERRED IN FAILING TO AWARD ATTORNEY FEES TO APPELLANT-WIFE.**

{¶8} For ease of discussion, we elect to address Susan's first three assignments of error together, as they deal with substantially similar issues. In her first three assignments of error, Susan argues that the trial court erred in characterizing the cottage at Indian Lake, the appreciation on the Sea Ray boat and the Dodge Ram, and the farm savings account and farm checking account as separate property.

{¶9} In a divorce proceeding, the trial court must determine whether property is marital or separate property. *Gibson v. Gibson,* 3rd Dist. No. 9-07-06, 2007-Ohio-6965, ¶ 29 citing R.C. 3105.171(B), (D). This court reviews the trial court's classification of property as marital or separate property under a manifest weight of the evidence standard. *Gibson,* 3rd Dist. No. 9-07-06, at ¶26, quoting *Eggeman v. Eggeman,* 3rd Dist. No. 2-04-06, 2004-Ohio-6050, ¶14, citing *Henderson v. Henderson,* 3rd Dist. No. 10-01-17, 2002-Ohio-2720, ¶28. Accordingly, the trial court's judgment will not be reversed if the decision is supported by some competent, credible evidence. *Eggeman,* 2004-Ohio-6050, at ¶14 citing *DeWitt v. DeWitt,* 3rd Dist. No. 9-02-42, 2003-Ohio-851, ¶10. In determining whether competent, credible evidence exists, "[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the

credibility of the testimony." *Barkley v. Barkley* (1997), 119 Ohio App.3d 155, 159, 694 N.E.2d 989 citing *In re Jane Doe I* (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181.

{¶10}  Marital property is defined by R.C. 3105.171(A)(3)(a) as follows:

**All real and personal property that currently is owned by either or both of the spouses, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;**

**(ii)  All interest that either or both of the spouses currently has in any real or personal property, including, but not limited to, the retirement benefits of the spouses, and that was acquired by either or both of the spouses during the marriage;**

**(iii) Except as otherwise provided in this section, all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage;**

**(iv) A participant account, as defined in section 148.01 of the Revised Code, of either of the spouses, to the extent of the following: the moneys that have been deferred by a continuing member or participating employee, as defined in that section, and that have been transmitted to the Ohio public employees deferred compensation board during the marriage and any income that is derived from the investment of those moneys during the marriage; the moneys that have been deferred by an officer or employee of a municipal corporation and that have been transmitted to the governing board, administrator, depository, or trustee of the deferred compensation program of the municipal corporation during the marriage and any income that is derived from the investment of those moneys during the marriage; or the moneys that have been deferred by an officer or employee of a government unit, as defined in section 148.06 of the Revised Code, and that have been transmitted to the governing board, as defined in that section, during the marriage**

**and any income that is derived from the investment of those moneys during the marriage.**

**{¶11}** However, marital property does not include any separate property. R.C. 3105.171(A)(3)(b). Separate property is defined by R.C. 3105.171(A)(6)(a) which provides in pertinent part as follows:

**(i)  An inheritance by one spouse by bequest, devise, or descent during the course of the marriage;**

**(ii)  Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;**

**(iii) Passive income and appreciation acquired from separate property by one spouse during the marriage;**

**(iv) Any real or personal property or interest in real or personal property acquired by one spouse after a decree of legal separation issued under section 3105.17 of the Revised Code;**

**(v)  Any real or personal property or interest in real or personal property that is excluded by a valid antenuptial agreement;**

**(vi) Compensation to a spouse for the spouse's personal injury, except for loss of marital earnings and compensation for expenses paid from marital assets;**

**(vii)  Any gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse.**

**{¶12}** In addition to the statutory definitions of marital and separate property, we note that "[t]he commingling of separate property with other property of any type does not destroy the identity of the separate property as separate

property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). Therefore, traceability is the main issue in determining whether separate property has become marital property due to commingling. *Earnest v. Earnest,* 151 Ohio App.3d 682, 785 N.E.2d 766, 2003-Ohio-704, ¶38, citing *Peck v. Peck* (1994), 96 Ohio App.3d 731, 734. 645 N.E.2d 1300. Further, "the party seeking to establish an asset as separate property * * * has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Id.*

{¶13} In the present case, Susan argues that the cottage at Indian Lake ("the cottage") which was deeded in both of their names was not separate property belonging to Terry. With respect to the cottage, the trial court found as follows:

> **Wife seeks an interest in the property for two reasons. The first reason is because it was purchased during the marriage and because her name is on the deed. Wife also cites her contribution to improving the property as a reason the Court could consider the property marital. The parties agree that the value of the property at the time of purchase was $44,000.00. The parties also agreed that the value of the property at the present time remains $44,000.00 despite the improvements made. Ohio Revised Code Section §3105.171(H) indicates that the holding of title to property by one spouse individually or by both spouses in the form of co-ownership does not determine whether the property is marital property or separate property. The Husband provided proficient tracing to show that the purchase of the Indian Lake cottage came from his separate non-marital monies. Wife's contribution did not increase the value of the property. Therefore, the Court finds, based [sic] the totality of the circumstances, that the cottage at Indian Lake is the separate non-marital property of the Husband.**

{¶14} Specifically, Susan argues that the trial court erred by failing to consider that the cottage became marital property because it was given as a gift. As an initial matter, we note that Susan did not raise this argument, that the cottage was deeded in part to her as a gift, before the trial court. It is axiomatic that a party may not assert an issue for the first time on appeal. *Gibson*, 2007-Ohio-6965 at ¶34. Therefore, we find that Susan is now precluded from arguing that the cottage was marital property as a result of a gift.

{¶15} However, in the interest of justice, we will address Susan's argument that the cottage was converted to marital property as a gift. R.C. 3105.171(H) specifically provides that "(e)xcept as otherwise provided in this section, the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." Therefore, we agree with the trial court that the deed itself is not wholly determinative of whether the cottage remains separate property.

{¶16} Separate property may also be converted to marital property by inter vivos gift. *Helton v. Helton* (1996), 114 Ohio App.3d 683, 685, 683 N.E.2d 1157. The elements of an inter vivos gift are "'(1) an intention on the part of the donor to transfer the title and right of possession of the particular property to the donee then and there and (2), in pursuance of such intention, a delivery by the donor to the donee of the subject-matter of the gift to the extent practicable or possible,

considering its nature, with relinquishment of ownership, dominion and control over it.'" *Helton*, 114 Ohio App.3d at 685-686, quoting *Bolles v. Toledo Trust Co.* (1936), 132 Ohio St. 21, 4 N.E.2d 917 at syllabus. Additionally, "'[a]n inter vivos gift is an immediate, voluntary, gratuitous and irrevocable transfer of property by a competent donor to another.'" *Helton,* 114 Ohio App.3d at 685-686, quoting *Smith v. Shafer* (1993), 89 Ohio App.3d 181, 183, 623 N.E.2d 1261.

{¶17} The party claiming an inter vivos gift bears the burden of showing by clear and convincing evidence that such a gift was made. *Id.* Moreover, the existence of a deed in the names of both parties does not shift the burden away from the donee spouse to prove that an inter vivos gift occurred. See *Jones v. Jones* 4th Dist. No. 07CA25, 2008-Ohio-2476; *Brady v. Brady*, 11th Dist. No. 2007-P-0059, 2008-Ohio-1657; *Gibson v. Gibson* 5th Dist No. 2006 AP 01 0009, 2007-Ohio-2087; *Ardrey v. Ardrey*, 3rd Dist. No. 14-03-41, 2004-Ohio-2471.

{¶18} In the present case, although Susan's name was on the deed, no facts were presented at the hearing that would indicate that partial ownership of the cottage was a gift. Moreover, in her brief, Susan cites to no evidence to indicate that the cottage was a gift, other than the deed. Therefore, the record is silent as to the element of donative intent.

{¶19} Additionally, other than Susan's claims that she helped with improvements on the cottage, there is nothing in the record to contradict Terry's

claim that the cottage is his separate property. Moreover, ample evidence was provided by Terry to trace the money used to purchase the cottage to proceeds from the sale of real estate occurring prior to the marriage, which was the separate property of Terry. Therefore, we find that the trial court's determination that the cottage is the separate property of Terry is supported by competent, credible evidence.

{¶20} Susan also argued that the trial court erred in finding the appreciation on the Dodge Ram truck and the Sea Ray boat to be the separate property of Terry. In considering the appreciation of these assets, the trial court found that "[t]he Husband provided proof of these purchases being made from his separate farm accounts and also for value of items that were owned prior to the marriage by the Husband as trade. Wife was unable to prove otherwise that the monies were not Husbands [sic]."

{¶21} In support of her argument, Susan relies on *Middendorf v. Middendorf,* 82 Ohio St.3d 397, 696 N.E.2d 575, 1998-Ohio-403. In *Middendorf,* the Ohio Supreme Court considered whether the appreciation in value on a stockyard that occurred during a marriage, was separate or marital property. The Court noted that the stockyard itself was separate property, but then considered the classification of the appreciation that occurred during the marriage. The court concluded that the appreciation was marital property. In reaching this conclusion,

the *Middendorf* Court relied on a finding that the increase in the value of the stockyard was due to labor, money, or in-kind contributions. See R.C. 3105.171(A)(3)(a)(iii). Specifically, the court in *Middendorf* found that the husband's labor made the appreciation that occurred during the marriage marital property.

{¶22} However, the *Middendorf* Court specifically noted that appreciation due to labor, money, or in-kind contributions of either spouse was to be distinguished from passive appreciation. Passive appreciation value remains separate property. See, R.C. 3105.171(A)(6)(a)(iii).

{¶23} Here, any appreciation that occurred on the Dodge Ram and the Sea Ray boat was the result of passive appreciation. The Sea Ray boat was purchased and sold during the marriage with Terry's separate funds from the farm account. Although Terry made a profit on the sale of the Sea Ray boat, we note that the profit was then put into a Fisher pontoon boat, which is still at the cottage.

{¶24} With respect to the Dodge Ram, which was bought and sold during the course of the marriage, the increase in value of the Ram was the result of passive appreciation. Therefore, the income from the sale of the Ram would still be treated as separate property.

{¶25} We note that in making this determination that the appreciation on the Dodge Ram and the Sea Ray boat was passive, we are assuming that no labor,

money, or in-kind contribution was put into these items to increase their value. This assumption arises from the failure of Susan to introduce any evidence to the contrary that would meet her burden of proving that this separate property has been converted to marital property.

{¶26} Finally, Susan argues that the trial court erred by characterizing the bank accounts of the farm as separate property.[1] Susan does not appear to claim that the funds in these accounts prior to the marriage are marital property. Instead, she claims that funds deposited in the accounts during the course of the marriage should be treated as marital property.

{¶27} Initially, we note that although Susan now argues that she is entitled to some part of the business, she did not make that argument at the trial court. Moreover, Susan appears to confuse two arguments: 1) that she is entitled to part of the business income that occurred during the marriage, and 2) that she is entitled to part of the appreciation on the business, based on *Middendorf*.

{¶28} As previously noted, a party may not assert an issue for the first time on appeal. See *Gibson*, 2007-Ohio-6965 at ¶34. Here, Susan did not raise the issue of allocation of business income or appreciation on the farm business at trial. In fact, as no argument was made to this effect, the trial court did not even address the matters of business income or appreciation allocation in its judgment entry.

---

[1] The farm accounts include both a checking and savings account, but will be discussed together.

**{¶29}** In *Middendorf*, where appreciation of a business was at issue, expert testimony was introduced as to the value of the appreciation of the business. Here, no evidence was introduced specifically giving a value to the appreciation on the business. Moreover, although it is argued on appeal that income can be substituted for appreciation, this is simply not the case. Therefore, we find that the trial court's determination that Susan was not entitled to any part of the business was supported by competent credible evidence. Accordingly, Susan's first, second, and third assignments of error are overruled.

**{¶30}** In her fourth assignment of error, Susan argues that the trial court erred by failing to award attorney fees to her. An award of attorney's fees is generally within the sound discretion of the trial court and not to be overturned absent an abuse of discretion. *Kaufman v. Kaufman,* 3rd Dist. No. 2-05-24, 2006-Ohio-603, ¶30, citing *Babka v. Babka* (1992), 83 Ohio App.3d 428, 435, 615 N.E.2d 247. An abuse of discretion connotes more than a mere error of judgment; it implies that the trial court's attitude is arbitrary, unreasonable, or unconscionable. *Blakemore v. Blakemore*, (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140.

**{¶31}** Absent a statute to the contrary, bad faith on behalf of a party, or a contractual obligation, the general rule is that each party is to bear his own attorney's fees. *Am. Premiere Underwriters v. Marathon Ashland Pipeline,* 3rd

Dist. No. 10-03-12, 2004-Ohio-2222, ¶ 23, citing *Sorin v. Bd. of Edn. of Warrensville Heights School Dist.* (1976), 46 Ohio St.2d 177, 179, 347 N.E.2d 527; *McConnell v. Hunt Sports Ent.* (1999), 132 Ohio App.3d 657, 725 N.E.2d 1193.

{¶32} R.C. 3105.73 governs the awarding of attorney's fees in domestic relations cases. The statute states, in pertinent part:

> **In an action for divorce, dissolution, legal separation, or annulment of marriage or an appeal of that action, a court may award all or part of reasonable attorney's fees and litigation expenses to either party if the court finds the award equitable. In determining whether an award is equitable, the court may consider the parties' marital assets and income, any award of temporary spousal support, the conduct of the parties, and any other relevant factors the court deems appropriate.**

R.C. 3105.73(A).

{¶33} In the present case, the trial court found that

> **[e]ach party seeks Attorney's fees from the other. Wife indicates that she would not have been able to prosecute her claims unless Husband paid her Attorney's fees. Wife has borrowed money from her sister for the retainer for her Attorney. Wife claims that she is going to be required to repay her sister although there is no note or testimony verifying the obligation. Husband seeks Attorney's fees based upon the conduct of the wife during the course of the proceedings. He claims that wife committed financial misconduct. There was insufficient evidence for the claims of either party. The Court finds that each party shall pay his or her own Attorney's fees.**

{¶34} We agree with the trial court's assessment of the evidence presented by both parties on the issue of attorney fees. Neither party presented sufficient

evidence to support their claims for attorney fees based on need or the misconduct of the other party. Therefore, we find that the trial court acted within its discretion in disallowing both parties' claims for attorney fees. Susan's fourth assignment of error is overruled.

{¶35} Based on the foregoing, the July 15, 2008 Judgment Entry Decree of Divorce of the Court of Common Pleas, Family Division, Marion County, Ohio is affirmed.

*Judgment Affirmed*

**PRESTON, P.J. concurs.**

**/jlr**

**ROGERS, J., Concurring as to Assignments of Error Nos. 2, 3, and 4, and Dissenting as to Assignment of Error No. 1.**

{¶36} I respectfully dissent from the opinion of the majority on the first assignment of error. While the majority might have followed conventional wisdom in finding that the cottage is Terry's separate property, I find troubling the lack of importance placed upon the formally executed deed of the parties.

{¶37} The majority's conclusion places its reliance upon three established legal principles: that separate property can be converted into marital property by inter vivos gift, *Helton v. Helton* (1996), 114 Ohio App.3d 683, 685; that the party claiming an inter vivos gift has been made bears the burden of demonstrating that

gift by clear and convincing evidence, Id.; and, that the holding of title to property by both spouses in a form of co-ownership, in and of itself, is not determinative of whether the property is marital or separate. R.C. 3105.171(H). While the majority and other courts are generally correct in applying these principles to issues of inter vivos gifts, I believe there has been a failure to recognize long-established case law regarding formally executed deeds.

{¶38} A deed transfers an interest in real property, see Black's Law Dictionary (8 Ed. 2004), and the well-settled general rule in Ohio is that a deed executed in the correct form is presumed valid and cannot be set aside except on a showing of fraud, undue influence, or lack of capacity by clear and convincing evidence by the party challenging the validity of the deed. *Household Fin. Corp. v. Altenberg* (1966), 5 Ohio St.2d 190, syllabus; *Weaver v. Crommes* (1959), 109 Ohio App. 470, paragraph two of the syllabus. See, also, *Henkle v. Henkle* (1991), 75 Ohio App.3d 732 (a deed executed in the correct form is presumed to be valid and will not be set aside except upon a showing, by clear and convincing evidence, of undue influence or mistake by the party seeking recission or cancellation); *Augenstein v. Augenstein* (2000), 107 Ohio Misc.2d 44, 52-53 ("[w]hether the ground asserted for setting aside [a] formal written instrument [such as a deed] be lack of capacity, fraud or undue influence, the plaintiff cannot succeed unless he establishe[s] either lack of mental capacity, fraud, or undue influence by clear and

convincing evidence"). Accordingly, it follows that a grantor spouse who executes a deed to the grantee spouse, granting an interest in the grantor-spouse's separate real property, has given to the grantee spouse an interest that cannot be set aside absent a showing by the grantor spouse, by clear and convincing evidence, of fraud, undue influence, or lack of capacity. While R.C. 3105.171(H) may establish that spouses holding title to property in a form of co-ownership does not, in and of itself, determine whether the property is marital or separate, this section does not overrule the general requirements for setting aside a formally executed deed. As such, effect must be given to both the established case law and the statutory rule found in R.C. 3105.171(H). Accordingly, a court must consider the totality of the circumstances, but must also place the burden of proof on the grantor spouse to prove fraud, undue influence, or lack of capacity by clear and convincing evidence.

{¶39} To the extent that cases dealing with inter vivos gifts have placed the burden of proof on the donee to prove that the donor had the requisite donative intent to convert separate property into marital property, those cases not involving a formally executed deed were decided properly. See *Gibson v. Gibson*, 3d Dist. No. 9-07-06, 2007-Ohio-6965, ¶31. On the other hand, I respectfully disagree with the decisions that have placed the burden of proof on the donee/transferee when the facts involved an interest in real property being transferred by one

spouse to another spouse by a formally executed deed. See, *Helton*, 114 Ohio App.3d at 685; *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶8; *Eggman v. Eggman*, 3d Dist. No. 2-04-06, 2004-Ohio-6050, ¶30. However, even those cases stating that the burden of proof is on the donee/transferee appear to place some importance on the formally executed deed, with some cases even requiring the party attempting to set aside the deed to carry the burden of proof. See, *Helton,* 114 Ohio App.3d 683 (finding that husband had donative intent to grant an interest in his separate property to his wife, and, consequently, that the property was converted into marital property, even though the court found that the main purpose behind the grant was to further the avoidance of taxes and probate); *Jackson*, 2008-Ohio-1482 (finding that the trial court abused its discretion in holding that the wife did not have the donative intent necessary to convert her separate property into marital property when she transferred an interest in the property to her husband through a deed making them joint tenants, and finding that wife did not meet her burden of proof to set aside the deed based on her argument for undue influence); and *Eggman*, 2004-Ohio-6050 (relying on a deed that transferred interest in property to wife in finding that husband had the requisite donative intent to convert his separate property into marital property by inter vivos gift).

{¶40} In the case at bar, while Terry did not directly deed the cottage to Susan, he chose to have the cottage deeded in both their names after he purchased it with his separate funds. Now, Terry seeks to have Susan's interest in the property eliminated despite the existence of a validly executed deed. Consequently, the burden of proof should be on Terry to establish that Susan has no marital interest in the property. However, the majority places the burden of proof on Susan to demonstrate that Terry had the requisite donative intent for the cottage at Indian Lake, purchased with his separate funds, to become marital property. The majority places no significance on the fact that Terry had the property deeded to both Susan and himself; the majority is willing to set aside a validly executed deed with no evidence of an irregular or illegal transfer.

{¶41} Terry had the deed placed in the names of both parties, with the right of survivorship, which is generally accepted as a means of estate planning and of avoiding the expense of probate. Furthermore, R.C. 5302.20 provides that a survivorship deed conveys an immediate interest in the real estate.

> **(C)  A survivorship tenancy has the following characteristics or ramifications:**
> **(1)   Unless otherwise provided in the instrument creating the survivorship tenancy, each of the survivorship tenants has an equal right to share in the use, occupancy, and profits, and each of the survivorship tenants is subject to a proportionate share of the costs related to the ownership and use of the real property subject to the survivorship tenancy.**

R.C. 5302.20(C)(1).

**{¶42}** Consequently, I would find that that the trial court applied the wrong legal standard; that the trial court imposed the burden of proof on the wrong party; that no evidence exists to divest Susan of her interest in the cottage at Indian Lake; and, that the trial court erred in finding the cottage to be Terry's separate property.

**{¶43}** However, I would concur with the result reached on assignments of error two, three, and four, as the boat, truck, and savings account do not implicate my concerns presented by the transfer of an interest in land through a formally executed deed.

**/jlr**