[Cite as *Wurm v. Wurm*, 2017-Ohio-861.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
HURON COUNTY

Courtney C. Wurm

     Appellee

v.

Randall L. Wurm

     Appellant

Court of Appeals No. H-15-018

Trial Court No. DR 2012 0269

**DECISION AND JUDGMENT**

Decided:  March 10, 2017

* * * * *

Shelly L. Kennedy, for appellant.

* * * * *

**JENSEN, P.J.**

{¶ 1} This is an appeal from the judgment of the Huron County Court of Common

Pleas.  Appellant, Randall Wurm, appeals the trial court's determination that the marital

residence is entirely marital property, and that he did not sufficiently trace his separate

property used for its construction.  For the reasons that follow, we reverse.

## I. Facts and Procedural Background

{¶ 2} Appellant and appellee, Courtney Wurm, were married on July 3, 1999. They have four children born of the marriage. On March 26, 2012, appellee filed a complaint for a divorce. Appellant also counterclaimed for a divorce. The parties have resolved the other issues, and the only matter before us is whether appellant sufficiently traced his separate property used to build their marital residence.

{¶ 3} Relative to that issue, the court held a hearing before a magistrate on November 7, 2013. At the hearing, the testimony revealed that the parties purchased 10 acres of land shortly after their marriage in 1999. The purchase price of the land was $31,000. Appellant testified that he purchased the land by selling $9,818 in Sprint stock, $6,412 in Gateway stock, and an additional $13,500 from a Fidelity Utilities mutual fund, thereby raising a total of $29,730 from his pre-marital assets. Appellant submitted financial statements and tax returns evidencing these transactions.

{¶ 4} The parties then began construction of their marital residence, which was completed around November 2000. Appellant testified that the cost to build the house was approximately $215,000, and appellee testified that she agreed with that amount. However, appellant was only able to produce receipts and other documentation indicating that the total cost was $161,716.09.

{¶ 5} It is undisputed that there were three sources of financing for the construction of the home: (1) sales from appellant's pre-marital investment accounts, (2) gifts and/or loans from appellant's parents, and (3) an $85,000 mortgage taken out in

2.

April 2000.  As to appellant's pre-marital investment accounts, appellant testified that in February 2000 he sold $12,678 worth of shares in a Fidelity Dividend Growth Exchange fund, in May 2000 he sold $13,572 worth of shares in a First Citizens Dividend Reinvestment fund and $8,739 in Cedar Fair stock, in June 2000 he sold $35,000 worth of shares in his Fidelity Utilities mutual fund, and in October 2000 he sold another $37,000 worth of shares from that same fund.  Again, appellant submitted financial statements and tax returns evidencing these transactions.  The total amount raised by appellant through the sales of his pre-marital stock was $106,989.

{¶ 6} Following the hearing, the magistrate issued his decision, in which he found that appellant had not sufficiently traced his separate property.  Specifically, as it relates to the $29,730 used to purchase the land, the magistrate found that marital debt in the form of the $85,000 mortgage taken out in April 2000 eliminated all of the equity in the land, and thus ended the traceability of appellant's separate property.  As to the $106,989 used for building the house, the magistrate found that appellant credibly proved that he raised those funds from his pre-marital separate property.  However, the magistrate found that appellant did not provide any evidence showing the value of the marital residence at the time, and found it unreasonable that appellant was requesting a dollar-for-dollar reimbursement of his separate property.  In addition, the magistrate found that the receipts and documentation regarding the cost of building the home was "almost completely unreliable" because it included documents labeled "estimates," bills to contractors, subcontractors, and appellant's father, and no indication of the source of

3.

funds used to pay said bills.  Therefore, the magistrate found that the residence was marital property subject to an equitable division.

{¶ 7} Appellant timely filed objections to the magistrate's decision.  On July 2, 2014, the trial court remanded the matter to the magistrate to "take additional evidence on the separate property claims of [appellant] in the [marital residence]."

{¶ 8} At the subsequent hearing on October 7, 2014, appellant submitted the auditor's valuation of the land in 2001 after the house was built, which was $278,600.  Appellant also submitted letters from his banks stating that the banks no longer had records of his financial transactions from 1999 and 2000 because those records are beyond the banks' seven-year retention policy.  Finally, appellant testified that appellee was in school, and was not working when the land was purchased and the house was built.

{¶ 9} Thereafter, the magistrate entered his decision on April 6, 2015, again finding that appellant had not sufficiently traced his separate property.  In his decision, the magistrate reasoned that none of the additional evidence addressed his findings that the money for the real estate was not traceable and that appellant's documentation for the building costs of the house was unreliable.  Appellant timely filed objections to the magistrate's decision, which the trial court overruled on August 31, 2015.  In its August 31, 2015 judgment entry, the trial court granted the divorce and divided the marital property evenly, awarding the marital residence to appellant, but ordering that he pay appellee $80,848.50, which represented an even split of the equity in the home less an unrelated offset.

4.

## II. Assignment of Error

{¶ 10} Appellant has timely appealed the trial court's August 31, 2015 judgment, and now asserts one assignment of error for our review:

> I. The trial court erred in classifying appellant's separate property, owned prior to the marriage and traced by a preponderance of the evidence, as marital property.

## III. Analysis

{¶ 11} "Appellate review of a trial court's classification of property as marital or separate is based upon a determination of whether the classification is against the manifest weight of the evidence." *Bigelow v. Bigelow*, 6th Dist. Lucas No. L-13-1018, 2014-Ohio-994, ¶ 22, citing *James v. James*, 101 Ohio App.3d 668, 684, 656 N.E.2d 399 (2d Dist.1995). "Where a classification is supported by some competent credible evidence in the record, it will not be reversed as against the manifest weight of the evidence." *Id.*, citing *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus.

{¶ 12} Relevant here, R.C. 3105.171(A)(6) provides,

> (a) "Separate property" means all real and personal property and any interest in real or personal property that is found by the court to be any of the following:
>
> * * *
>
> (ii) Any real or personal property or interest in real or personal property that was acquired by one spouse prior to the date of the marriage;

(iii)  Passive income and appreciation acquired from separate property by one spouse during the marriage;

* * *

(b)  The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable.

"The party seeking to have a particular asset classified as separate property has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property."  *Peck v. Peck*, 96 Ohio App.3d 731, 734, 645 N.E.2d 1300 (12th Dist.1994).

{¶ 13} In his brief, appellant argues that the only reasonable explanation for how a young couple with limited income built a house valued at $278,600 is that the proceeds from the sale of appellant's pre-marital stocks were used to finance the construction.

{¶ 14} As support for his argument, appellant cites *Riley v. Riley*, 6th Dist. Huron No. H-08-019, 2009-Ohio-2764, in which we held that the trial court erred in determining that the appellant wife had failed to trace her separate property.  In that case, the parties agreed that the wife had a pre-marital home, that she sold the home and received $46,388 in proceeds, and that the $46,388 in proceeds was used towards a $47,761 deposit on the construction of their marital home.  Furthermore, the appellee husband acknowledged that he had no other funds or assets from which the construction loan deposit could have been drawn.  In reversing the trial court, we reasoned that "[s]ince the parties agreed on the ultimate use and destination of the separate property proceeds, written documentation

6.

of the temporary deposit of the [pre-marital] proceeds was unnecessary to trace those funds." *Id.* at ¶ 17. Further, "the inference that the proceeds from the sale of one property were applied to the construction loan just three months later, does not require a 'leap of faith' or any other speculation. Rather, it is based on logic, common sense, and the parties' own testimony which provided the necessary verification." *Id.*

{¶ 15} We find the present situation to be analogous. Here, the parties do not dispute that the stock owned by appellant was his separate property. The parties also agree that the cost to purchase the land was $31,000, and the cost to build the home was $215,000. Relative to the land purchase, appellant produced financial statements showing that he sold $29,730 of his pre-marital stock within a few months prior to the purchase, and he testified that the proceeds were used to buy the land. Relative to the cost of building the home, appellant testified that it was financed through an $85,000 mortgage, gifts and/or loans from his parents, and the sale of his pre-marital stock. Again, appellant provided financial statements evidencing that he sold $106,989 worth of his stock during the construction period, and he testified that those proceeds were used to build the home. Notably, appellee testified that she did not bring any funds or assets into the marriage, and her trial counsel even acknowledged: "I agree that this house did not just magically appear. I agree that it's probably likely that a good amount of [appellant's] or some amount of [appellant's] separate property went into that house, but as the Court knows the issue becomes one of traceability."

{¶ 16} As was the case in *Riley*, the conclusion that appellant's separate property was used to build the marital residence is grounded in logic, common sense, and the

7.

parties' own testimony.  Appellant has demonstrated that he sold his pre-marital stocks to build the house, and appellee has not challenged that demonstration or provided any alternate explanation of how they paid for the house.  Therefore, we hold that the trial court's conclusion that appellant failed to trace his separate property in the marital residence is against the manifest weight of the evidence.

{¶ 17} Accordingly, appellant's assignment of error is well-taken.

{¶ 18} The next question we must resolve is the present value of appellant's separate property interest in the marital home.  In *Munroe v. Munroe*, 119 Ohio App.3d 530, 536-538, 695 N.E.2d 1155 (8th Dist.1997), the Eighth District provided a formula which multiplied the percentage of separate property initially invested in the home by the change in value of the home during the course of the marriage.  Here, appellant testified, and appellee agreed, that the cost to purchase the land was $31,000, and the cost to build the home was $215,000, for a total of $246,000.  Appellant contributed $136,719 of his separate property ($29,730 for the land, and $106,989 for the construction), or 55.6 percent of the total cost.  As to the change in value, the evidence shows that the home was initially valued at $278,600 in 2001,[1] and the parties stipulated that the current value was $248,500, for a net loss in value of $30,100.  Appellant must bear 55.6 percent of

---

[1] While appellee stipulated to the admission of the 2001 auditor's report, appellee did not necessarily stipulate that the then value of the home was $278,600.  Nevertheless, because the valuation proposed by appellant was $32,600 higher than the actual cost of $246,000, and because a higher valuation benefits appellee because appellant must therefore recognize a higher loss, we do not find it prejudicial to appellee to use the auditor's 2001 valuation.

8.

that loss, thereby reducing the value of his separate property contribution by $16,736. Thus, the total present value of appellant's separate property interest in the marital home is $119,983.

## IV. Conclusion

{¶ 19} For the foregoing reasons, the judgment of the Huron County Court of Common Pleas is reversed. The matter is remanded to the trial court for an equitable division of property consistent with this decision recognizing that appellant has a separate property interest of $119,983 in the marital home. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment reversed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Thomas J. Osowik, J.

_____
JUDGE

James D. Jensen, P.J.
CONCUR.

_____
JUDGE