[Cite as *Worden v. Worden*, 2017-Ohio-8019.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STEPHANIE N. WORDEN,

    PLAINTIFF-APPELLEE,

    v.

CHAD M. WORDEN,

    DEFENDANT-APPELLANT.

CASE NO. 9-16-54

O P I N I O N

Appeal from Marion County Common Pleas Court
Family Division
Trial Court No. 16-DR-73

Judgment Affirmed in Part, Reversed in Part
and Cause Remanded

Date of Decision: October 2, 2017

APPEARANCES:

    *Jeff Ratliff* for Appellant

    *Robert C. Nemo* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Chad M. Worden ("Chad") appeals the judgment of the Family Division of the Marion County Court of Common Pleas for (1) classifying the house at issue in this appeal as the separate property of Stephanie N. Worden ("Stephanie") (2) failing to award him any share in the appreciation in the value of the house, and (3) failing to give him any share in the equity in the home. For the reasons set forth below, the judgment of the lower court is reversed in part and affirmed in part.

*Facts and Procedural History*

{¶2} Prior to her marriage to Chad, Stephanie lived in a house in Caledonia, Ohio that was owned by her mother, Jonelle Matthews ("Matthews"). Tr. 134. This home had been owned by Matthews for roughly thirty years and was the home in which Stephanie spent part of her childhood. Tr. 9, 70, 95. Chad moved in with Stephanie in December of 2009, which was three years after Stephanie had moved back into this home. Tr. 126, 131. In August 2011, Matthews began the process of transferring ownership of this house to her daughter. Tr. 72, 94. On September 1, 2011, the house was valued by an appraiser at $140,000. Ex. 2. Tr. 15. Matthews owed $5,858.36 on the mortgage at this time. Tr. 39.

{¶3} Viewing this as an early inheritance for her daughter, Matthews only asked her daughter to pay $10,000 for the house because that amount would cover the costs of the transfer and pay off the remainder of what Matthews owed on the

house. Tr. 76, 84, 133. To finance this purchase, Stephanie went to AG Credit on August 26, 2011, and submitted a membership application to begin the process of obtaining a loan. Tr. 54. As part of this process, Matthews and Stephanie drew up an agreement on September 29, 2011 that detailed the terms of this transfer. Ex. 18. Tr. 75. Both Matthews and Stephanie signed this agreement. Ex. 18. Stephanie was mentioned in the document as the buyer of the property. *Id*. No mention of Chad was made in this document. *Id*.

{¶4} Before the transfer of the house was finalized, Chad and Stephanie were married on October 8, 2011 in Las Vegas. Doc. 1. The transfer of the house was not completed until January of 2012. Tr. 43, 72, 94. On January 13, 2012, Stephanie signed a promissory note and mortgage agreement with AG Credit. Ex. 5. Tr. 45. Only Stephanie signed the promissory note. Ex. 20. Both Chad and Stephanie signed the mortgage. *Id*. The deed, which was recorded on January 17, 2012, lists Stephanie as the owner and does not contain any reference to Chad. Ex. 1, 6. Tr. 61-62. After the deed was recorded, Chad and Stephanie decided to build an addition to the house. To pay for this addition, Stephanie went to AG Credit and borrowed an additional $112,200. Ex. 4. Tr. 16, 98. Only Stephanie's signature was on the promissory note. Ex. 20. Tr. 35-36. On July 11, 2012, both Chad and Stephanie signed a mortgage modification agreement that secured this loan. Ex. 4. Tr. 49. This mortgage modification was recorded on July 19, 2012. Ex. 4.

{¶5} During their marriage, Chad and Stephanie maintained separate bank accounts. Tr. 103, 108. In between January 2012 and November 2015, Chad paid the amount due on the mortgage each month. Tr. 118-119. Stephanie was responsible for other expenses associated with the house, such as the water bill and the trash bill. Tr. 20. On November 17, 2015, Chad moved out of the house, beginning the period of separation between Chad and Stephanie. Tr. 21. At this time, Chad ceased paying any of the costs associated with the house. Tr. 21. On March 16, 2016, Stephanie filed a complaint for divorce at the Family Division of the Marion County Court of Common Pleas. Doc. 1.

{¶6} On August 31, 2016, a divorce hearing was held. Much of the testimony addressed the issue of whether the house was marital or separate property. Tr. 22, 54, 64-66, 76, 125. Prior to this hearing, on May 20, 2016, Stephanie hired an appraiser to place a value on the house. Ex. 2. When the home was transferred in January of 2012, the home was valued at $140,000, placing the value of the equity that Stephanie had in the home at $130,000. Ex. 23. At the time of the divorce in 2016, which was after the addition to the house was completed at a cost of roughly $112,200, the house was valued at $170,000, leaving Stephanie with roughly $64,302 in equity. *Id.* This represented a decrease in equity of $65,698. *Id.*

{¶7} At the hearing, Chad disputed that the house was a gift from Matthews to Stephanie. Tr. 18. During his testimony, he also denied that the house was transferred only to Stephanie but admitted that only Stephanie's name was on the

deed. Tr. 9-10. Chad pointed out that the house was transferred three months into their marriage and testified that the house was transferred solely to Stephanie in the deed without his knowledge. Tr. 10. Chad also admitted that he was not financially liable for the sums borrowed from AG Credit but stated that the loan was in Stephanie's name alone because she had better credit than he did at the time of the transaction. Tr. 12. Chad concluded by requesting that the court award him a share of the equity in the home. Tr. 18.

{¶8} Stephanie then testified that she had been divorced prior to her marriage to Chad and, as a consequence of her previous marriage, kept her finances separately from Chad. Tr. 103. Stephanie stated that Chad was not listed on the promissory note or the deed because she did not want him to have an interest in the house and because Chad had poor credit. Tr. 99. She requested that the court award her the equity in the home as separate property. Tr. 102, 125. Matthews also testified. Tr. 70. She said that she gifted the house to Stephanie, intending it to be an early inheritance for her. Tr. 76. She also stated that she did not intend to give any interest in the property to Chad as part of the transfer. Tr. 82.

{¶9} Karen Frederick ("Frederick"), a loan originator with AG Credit, testified that Stephanie began the process of becoming a member of AG Credit on August 26, 2011, which was a necessary step towards obtaining a mortgage loan through that institution. Tr. 54. She explained that Stephanie was the sole borrower on the promissory notes issued by AG Credit and that Chad was in no way liable to

AG Credit for any of the debts assumed by Stephanie. Tr. 54. Frederick further explained that Chad was referred to as a joint mortgagor on the mortgage agreement for the purpose of releasing his dower interest as Stephanie's spouse. Tr. 35.

{¶10} Kevin Hall ("Hall"), an attorney in Marion, also testified what information could be gleaned from the deed and promissory notes. Tr. 59. Hall stated that Stephanie is the sole owner on the deed and that the deed does not contain any reference to Chad as an owner. Tr. 61-62. Hall also testified that Stephanie is the only person liable on the promissory notes, explaining that Chad's signature on the mortgage note released his dower interest and did not create liability for him on the promissory note. Tr. 64-66.

{¶11} On September 30, 2016, the trial court issued a ruling that found the house was the separate property of Stephanie. Doc. 16. In the October 19, 2016 judgment entry, the trial court explained that it awarded the house to Stephanie as separate property because it found that the house was gifted to Stephanie by her mother. Doc. 17. Under this order, Chad was not awarded any share of the equity in the house or any share in the appreciation in the value of the house. *Id.* Further, Stephanie was responsible for all of the debts associated with this property. *Id.* Chad filed a notice of appeal on November 18, 2016. Doc. 18. On appeal, he raises the following four assignments of error:

## First Assignment of Error

**The trial court erred by ruling that the real estate located at 338 Caledonia-Ashley Road South, Caledonia, Ohio 43314 was a gift from Appellee's mother as consideration was given to the Appellee's mother for the property.**

## Second Assignment of Error

**The trial court erred in ruling that the real property owned by the parties during the marriage was separate in nature, as it was acquired after the date of marriage and was not a gift.**

## Third Assignment of Error

**Even if the Court was correct in classifying this property as a gift and separate property, the real estate was converted to marital property status due to improvements and payments made during the marriage, and the Appellant should have been awarded one-half (1/2) of any appreciation of improvements as the improvements would be marital in nature.**

## Fourth Assignment of Error

**The trial court erred by not awarding the Appellant one-half (1/2) of the equity in the home, as the home was marital in nature and the Appellant contributed to the mortgage payments and property taxes during the term of the marriage.**

We will consider the first and second assignments of error together. We will then consider the third and fourth assignments of error.

*First and Second Assignments of Error*

{¶12} In his first assignment of error, Chad argues that the transfer of the house from Matthews to Stephanie was not a gift but was a purchase. To support this claim, he points to the payment of $10,000 to Matthews as consideration for the

house. Chad contends that Matthews's testimony regarding her intent to gift the house to Stephanie does not change the fact that this house was purchased for $10,000. On the basis of this argument, Chad asserts that the trial court erred in classifying the house as separate property. He requests that this Court reverse this determination and find that the house is marital property.

{¶13} Under his second assignment of error, Chad continues the argument advanced by his first assignment of error. He contends that the house was not separate property because the real estate was transferred after the date of his marriage to Stephanie. Since the house was acquired after the date of the marriage, Chad argues that the property qualifies as marital property. As part of this argument, he returns to the primary assertion of his first assignment of error: that the house was not a gift because Matthews's testimony regarding her subjective intent to gift the house does not change the fact that consideration was paid for the house. He concludes this assignment of error by again asking this Court to find that the house was marital property and not separate property.

Legal Standard

{¶14} In dividing property between the parties to a divorce action, the trial court identifies what property is marital and what property is separate. R.C. 3105.171(B). Marital property does not include any separate property. R.C. 3105.171(A)(4). After the trial court has classified assets as either marital or separate property, the separate property is generally awarded to the party who owns

that property regardless of whether the separate property was acquired before or during the marriage. R.C. 3105.171(D). The marital property is then to be divided equally between the parties unless such a division would be inequitable. R.C. 3105.171(C)(1).

{¶15} Separate property includes "[a]ny gift of any real or personal property or of an interest in real or personal property that is made after the date of the marriage and that is proven by clear and convincing evidence to have been given to only one spouse." R.C. 3105.171(A)(6)(a)(vii). "The party claiming an inter vivos gift bears the burden of showing by clear and convincing evidence that such a gift was made." *Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 25.

> **The essential elements of an inter vivos gift are (1) an intention on the part of the donor to transfer the title and right of possession to the donee, (2) delivery by the donor to the donee, (3) relinquishment of ownership, dominion, and control over the gift by the donor, and (4) acceptance by the donee. Therefore, a gift is a voluntary transfer by the donor to the donee without any consideration or compensation.**

(Citations Omitted.) *Williams v. Ormsby*, 131 Ohio St.3d 427, 2012-Ohio-690, 966 N.E.2d 255, ¶ 20, citing *Bolles v. Toledo Trust Co.*, 132 Ohio St. 21, 26-27, 4 N.E.2d 917, 919 (1936).

{¶16} "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). "However, 'title can be

some evidence of the parties' intent as to the nature of the asset being marital or separate.'" *Strasburg v. Strasburg*, 3d Dist. Auglaize No. 2-10-12, 2010-Ohio-3672, ¶ 20, quoting *Gallo v. Gallo*, 11th Dist. No.2000-L-208, 2002-Ohio-2815, ¶ 25. "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶17} The trial court's classification of property as marital or separate is a factual determination. *Rinehart v. Rinehart*, 4th Dist. Gallia No. 96 CA 10, 1998 WL 282622, (May 18, 1998). Appellate courts "[review] the trial court's classification of property as marital or separate property under a manifest weight of the evidence standard." *Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817, ¶ 9. *Thomas v. Thomas*, 2012-Ohio-2893, 974 N.E.2d 679, ¶ 31 (5th Dist.); *Miller v. Miller*, 7th Dist. Jefferson No. 08 JE 26, 2009-Ohio-3330, ¶ 20; *Dunham v. Dunham*, 171 Ohio App.3d 147, 2007-Ohio-1167, 870 N.E.3d 168, ¶ 26-27 (10th Dist.). "An appellate court will not reweigh the evidence introduced at trial; rather, we will uphold the findings of the trial court if the record contains some competent, credible evidence to support the trial court's conclusions." *Eggeman v. Eggeman*, 3d Dist. Auglaize No. 2-04-06, 2004-Ohio-6050, ¶ 27.

> **In determining whether competent, credible evidence exists, '[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures,**

**and voice inflections, and use those observations in weighing the credibility of the testimony.'**

*Bey v. Bey*, 3d Dist. Mercer No. 10-08-12, 2009-Ohio-300, ¶ 15, quoting *Barkley v. Barkley*, 119 Ohio App.3d 155, 159, 694 N.E.2d 989, 992 (4th Dist.1997).

Legal Analysis

{¶18} In this case, ample evidence was introduced to demonstrate that Matthews gifted the house to her daughter, Stephanie. The house at issue had been in the family for thirty years and was the house in which Stephanie was raised. Stephanie had also lived in this house for the five years immediately preceding her marriage. Further, the process of transferring the house to Stephanie appears to have begun in August of 2011 according to the records at AG Credit. Tr. 54. Stephanie and Matthews drew up a buyer's agreement on September 29, 2011, which discussed the details of the transfer. Ex. 18. This document did not mention Chad and was signed by both parties to the transfer prior to the October 8, 2011 marriage between Chad and Stephanie. *Id*. Thus, the context of this transfer strongly suggests that this family property was gifted specifically to Stephanie as an early inheritance.

{¶19} During the hearing, Matthews testified that she intended to gift this house solely to Stephanie as an early inheritance and that she made sure the property was only deeded in Stephanie's name. Tr. 76. Stephanie also testified that she intended to retain sole ownership of the house and did not want Chad to have an interest. Tr. 99, 103, 125. Since Stephanie and Matthews had both been through

divorces previously, Stephanie testified that they took steps to maintain this gift as separate property. Tr. 96-97. In support of these assertions, Stephanie pointed to the fact that she had maintained separate finances from Chad throughout the course of their marriage and had borrowed the money to finance the transfer and the renovation of the house from AG Credit in her name alone. Tr. 103, 108.

{¶20} Further, two experts—Frederick and Hall—also testified that Chad was not liable to AG Credit for the funds borrowed from that institution. Tr. 35, 64-65. These two experts also testified that the deed transferred the property to Stephanie and that Chad's signature was on the mortgage paperwork for the sole purpose of releasing his dower interest. Tr. 35, 66. Hall further testified that the deed does not reference Chad as an owner. Tr. 62. While the fact that the deed lists Stephanie as the sole owner does not conclusively establish that the house was intended to be a gift only to Stephanie, this fact in the larger context of this case is evidence that suggests this house was intended to be a gift.

{¶21} Chad argues that the fact that Stephanie paid $10,000 to her mother for the transfer means consideration was given for the house, making this a contractual arrangement and not a gift. However, the house was worth $140,000. Ex. 2. Matthews testified that she requested that Stephanie pay $10,000 to her because this would cover the costs of the transfer and the remaining balance on the mortgage, which was $5,858.36. Tr. 73, 84. Ex. 4. Matthews also stated that she was never offered fair market value from either Chad or Stephanie and reported this

transfer on her taxes as a gift. Tr. 76-77. Again, the context of this situation and the facts surrounding this transfer strongly suggest that Matthews gifted the house to Stephanie. Chad also argues that the final transfer of the house occurred after the marriage, making this a marital asset. However, the Revised Code recognizes that gifts to one spouse are separate property even if the transfer occurs during the course of the marriage. R.C. 3105.171(A)(6)(a)(vii). Thus, in this case, the timing of the transfer does not preclude the house from being a gift or from being separate property.

{¶22} After reviewing the record, we find that the trial court had some competent, credible evidence that supported its conclusion that the house was a gift from Matthews to Stephanie. Thus, the decision of the trial court to classify the house as Stephanie's separate property was not made against the manifest weight of the evidence. For these reasons, appellant's first and second assignments of error are overruled.

*Third Assignment of Error*

{¶23} In his third assignment of error, Chad puts forward an argument to be considered in the event that this Court found that the trial court correctly determined that the house was separate property. In this event, Chad argues that the trial court erred by failing to give him one half of the appreciation that resulted from improvements made to the house during the course of the marriage. Since the house was valued at $140,000 at the time of the transfer in 2012 and was valued at

$170,000 at the time of the divorce, Chad contends that he should be awarded one half of the $30,000 increase in value that occurred over the course of the marriage.

Legal Standard

{¶24} Under R.C. 3105.171(A)(3)(a)(iii), marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). An increase in value resulting from the contributions of either spouse is referred to as active appreciation. *Iacampo v. Oliver-Iacampo*, 11th Dist. Geauga No. 2011-G-3026, 2012-Ohio-1790, ¶ 19. "Appreciation of separate property due solely to market forces, such as location and inflation, is passive appreciation * * *." *Colley v. Colley*, 10th Dist. Franklin No. 09AP-333, 09AP-335, and 09AP-336, 2009-Ohio-6776, ¶ 19, citing *Sterbenz v. Sterbenz*, 9th Dist. Summit No. 21865, 2004-Ohio-4577, ¶ 5. "Passive appreciation value remains separate property." *Neville, supra*, at ¶ 22. An increase in value due to active appreciation, on the other hand, is marital property. *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575, 578 (1998).

{¶25} However, appreciation does not necessarily need to be divided into two equal shares that are then awarded to each party. *Brandon, supra*, at ¶ 21; *Wurm v. Wurm*, 6th Dist. Huron No. H-15-018, 2017-Ohio-861, ¶ 18; *Munroe v. Munroe*, 119 Ohio App.3d 530, 695 N.E.2d 1115 (8th Dist.1997); *Sterbenz* at ¶ 6. R.C. 3105.171(C)(1) reads, in its relevant part, as follows:

> **[T]he division of marital property shall be equal. If an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors * * *.**

R.C. 3105.171(C)(1). Thus, under the Revised Code, the ultimate duty of the trial court in a divorce proceeding is not to create a perfectly equal distribution of assets but an equitable distribution of assets. *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 95, 518 N.E.2d 1197, 1200 (1988) (holding that "[a]n unequal property division does not, standing alone, amount to an abuse of discretion" and that "[e]quitable need not mean equal.").

{¶26} "Trial courts have 'broad discretion to determine what property division is equitable in a divorce proceeding.'" *Collins v. Collins*, 3d Dist. Marion No. 9-10-53, 2011-Ohio-2339, ¶ 28, quoting *Cherry v. Cherry*, 66 Ohio St.2d 348, 421 N.E.2d 1293 (1981), paragraph two of the syllabus. "A trial court's decision allocating marital property and debt will not be reversed absent an abuse of discretion." *Huelskamp v. Huelskamp*, 185 Ohio App.3d 611, 2009-Ohio-6864, 925 N.E.2d 167, ¶ 12 (3d Dist.), citing *Jackson v. Jackson*, 3d Dist. No. 11-07-11, 2008-Ohio-1482, ¶ 15. "An abuse of discretion is more than an error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Schroeder v. Niese*, 2016-Ohio-8397, 78 N.E.3d 339, ¶ 7, quoting *Heilman v. Heilman*, 3d Dist. Hardin No. 6-12-08, 2012-Ohio-5133, ¶ 14. "When applying the

abuse of discretion standard of review, this court is not free merely to substitute its judgment for that of the trial court." *Kreitzer v. Anderson*, 157 Ohio App.3d 434, 2004-Ohio-3024, 811 N.E.2d 607, ¶ 16 (3d Dist.).

Legal Analysis

**{¶27}** In this case, Stephanie obtained the house when it was valued at $140,000. In 2012, Stephanie borrowed $112,200 to build an addition to the home. By the time of the divorce, the house was valued $170,000. Thus, Stephanie's investment appears to have increased the value of the home by $30,000. Chad argues that he should be awarded half of this sum because this amount represents active appreciation. However, in these circumstances, we find that the trial court did not abuse its discretion in deciding not to award half the value of this appreciation to Chad for three key reasons.

**{¶28}** First, the house is under a greater encumbrance now than it was at the time the house was gifted to Stephanie. While the appraised value of the house has increased, the equity Stephanie had in the house has decreased dramatically. At the time the house was transferred from Matthews to Stephanie, the house was worth $140,000. Ex. 2, 23. Stephanie had to borrow $10,000 to finance the transfer, which means that Stephanie had $130,000 in equity at that time. Ex. 23. During the course of the marriage, she borrowed $112,200 to finance the construction of an addition to the house. Ex. 4. The balance on the mortgage at the time of the divorce was $105,698.34, which left Stephanie with $64,301.66 in equity. Ex. 4, 23. Thus,

-16-

Stephanie invested $112,200 to make an addition to the house that resulted in a $30,000 increase in value. In this process, she lost roughly $65,698 in equity, leaving her with less than half of the equity that she had at the beginning of the marriage. Ex. 23. While the appraisal shows an increase in value, the mortgage documents show a loss in value. *See Brandon, supra*, at ¶ 21; *Sterbenz* at ¶ 6; *Hood v. Hood*, 10th Dist. Franklin No. 10AP-999, 2011-Ohio-3704, ¶ 22. Under Chad's proposed division, he would get one half of the $30,000 appreciation in the house's value. This would cause Stephanie to lose an additional $15,000, bringing her total loss on this investment to roughly $80,698 in equity. It would be inequitable for Chad to gain $15,000 from Stephanie's loss.

{¶29} Second, this was a separate investment undertaken by Stephanie with separate funds. Stephanie essentially spent the equity in her house on this addition. The funds she borrowed can easily be traced to the equity that her mother gifted to her, which was separate property. Ex. 4. Thus, Stephanie used the value of her separate property to make improvements on her separate property. Other than paying monthly mortgage payments, Chad does not mention in the record that he made contributions that resulted in the increase in the appraised value of the house.[1] Marital money did not finance the investment that Stephanie made in the house and

---

[1] Chad's monthly mortgage payments did not generate the appreciation in the house as the house was under a greater encumbrance at the time of the divorce than it was at the time of the gift. Rather, these payments made Stephanie's loss on the investment smaller, increasing the equity in the house. Since this is the subject of the fourth assignment of error, we will address Chad's monthly mortgage payments under that assignment of error. *See Brandon*, *supra*, at ¶ 21.

was not lost in this investment. While this fact is not dispositive, it should be considered in examining the equity of the trial court's award in this particular case. Since it was her separate equity that financed the appreciation in the appraised value of her separate property, we find that it is equitable that the value of the appreciation remains with Stephanie in these circumstances.

{¶30} Finally, Stephanie is willing to assume the entire mortgage debt on the house. She is not seeking to impose liability on Chad for a debt that he did not incur. She is willing to shoulder the losses associated with her investment in her separate property. In so doing, Stephanie is taking responsibility for roughly $105,698.34 in costs for $30,000 in benefits. Ex. 4. Chad is seeking $15,000 in benefits without shouldering any of these costs. Under the facts of this specific case, it is equitable for the appreciation in the appraised value of the house to remain with the party who is financially responsible for the mortgage debt that is supporting that appreciation. It would be inequitable for Chad to obtain one half of the appreciation without bearing the burden of any of the corresponding mortgage debt. Thus, we do not find an abuse of discretion on the part of the trial court regarding this issue. For these reasons, Chad's third assignment of error is overruled.

*Fourth Assignment of Error*

{¶31} In his fourth assignment of error, Chad advances another argument to be considered in the event that this Court found that the trial court correctly determined that the house was separate property. In this argument, Chad argues that

the trial court erred in failing to award him a portion of the equity in the house. He contends that the mortgage on the house was reduced by his monthly mortgage payments, which were made with his income. For this reason, Chad argues that he should have been awarded one half of the marital equity that was built up during the course of the marriage through mortgage payments made with marital monies.

Legal Standard

{¶32} "The commingling of separate property with other property of any type does not destroy the identity of the separate property as separate property, except when the separate property is not traceable." R.C. 3105.171(A)(6)(b). "[I]ncome or monies earned during the marriage are marital property." *Celeschi v. Celeschi*, 5th Dist. Coshocton No. 10-CA-6, 2011-Ohio-375, ¶ 21. *See Hood, supra*, at ¶ 24. Even if a house is the separate property of one spouse, a portion of the equity in the home may still be marital. *See Huelskamp, supra*, at ¶ 14. *See Davenport v. Davenport,* 7th Dist. Belmont No. 02 BE 47, 2003-Ohio-4877, ¶ 7; *Oberly v. Oberly*, 2d Dist. Greene No. 06-CA-90, 2007-Ohio-4571, ¶ 17; *Meeks v. Meeks*, 10th Dist. Franklin No. 5AP-315, 2006-Ohio-642.

{¶33} In the course of divorce proceedings, the trial court must determine whether property is marital or separate. R.C. 3105.171(B). "[T]he characterization of property as marital or separate under R.C. 3105.171 is not discretionary; rather, it is a mixed question of law and fact." *Herron v. Herron*, 3d Dist. Allen No. 1-04-23, 2004-Ohio-5765, ¶ 14, citing *Bechara v. Essad*, 7th Dist. No. 03 MA 34, 2004-

Ohio-3042, ¶ 82. The trial court's classification of property is reviewed under a manifest weight standard. For this reason,

> **[t]he factual findings of a trial court relating to its classification of property as marital or separate are reviewed to determine whether they are against the manifest weight of the evidence and will not be reversed if they are supported by some competent and credible evidence. In determining whether competent, credible evidence exists, '[a] reviewing court should be guided by a presumption that the findings of a trial court are correct, since the trial judge is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the testimony.'**

(Citations omitted.) *Barrientos v. Barrientos*, 3d Dist. Hancock No. 5-12-13, 2013-Ohio-424, ¶ 20.

**{¶34}** After the trial court has properly classified property, the trial court divides the marital property equitably between the two parties. R.C. 3105.171(B). Under R.C. 3105.171, "the division of marital property should be equal unless an equal division would not be equitable, in which case the court shall divide the property in a manner that it determines to be equitable." *Welsh-Pojman v. Pojman*, 3d Dist. Crawford No. 3-03-12, 2003-Ohio-6708, ¶ 21, citing R.C. 3105.171(C)(1). "Trial courts are vested with broad discretion when fashioning equitable divisions of marital property." *Link v. Link*, 3d Dist. Mercer No. 10-11-21, 2012-Ohio-4654, ¶ 58, citing *Hendricks v. Hendricks*, 3d Dist. Van Wert No. 15-08-08, 2008-Ohio-6754, ¶ 25. As such, a trial court's decision in the division of property is reviewed under an abuse of discretion standard. *Id*. "An abuse of discretion is more than an

error of judgment; rather, it implies that the trial court's decision was unreasonable, arbitrary, or capricious." *Niese*, *supra*, at ¶ 7, quoting *Heilman, supra,* at ¶ 14. "When applying the abuse of discretion standard of review, this court is not free merely to substitute its judgment for that of the trial court." *Kreitzer, supra*, at ¶ 16.

Legal Analysis

**{¶35}** In this case, Matthews gifted Stephanie a house with $130,000 in equity. *See* Ex. 4, 19. Stephanie used the equity in the house to borrow $112,200 to build an addition to the house. Ex. 20. The addition, in turn, added $30,000 in value to the house, bringing the value of the home from $140,000 to $170,000. Ex. 2. Thus, this loan had the effect of bringing the equity in the home down from $130,000 at the time of the transfer to roughly $57,800 by the time that the addition was completed.[2] By the time Stephanie and Chad filed for divorce, the equity in the home had risen to $64,301.66, which represents an increase in equity of $6,501.66. Ex. 4.

**{¶36}** During the course of their marriage, Chad and Stephanie maintained separate finances and each took responsibility for different expenses. Both Stephanie and Chad testified that Chad made the monthly mortgage payments on the house. These payments were made with funds that Chad earned while he was

---

[2] The equity in the home went from $130,000 to $27,800 after Stephanie took out the loan of $112,200. Ex. 2, 5, 6, 23. Once the addition was completed, the value of the home increased by $30,000, bringing the equity in the home to $57,800. Ex. 2, 23. Thus, this number—$57,800 in equity—accounts for the appreciation in the house's value from $140,000 to $170,000 as the result of the addition financed by the $112,200 loan. Ex. 2, 4, 5, 23.

working during the marriage and were, thus, made with marital monies. The fact that marital monies were used to pay down the balance on the mortgage does not change the status of the house as separate property. Similarly, the fact that a portion of the equity is traceable to marital monies does not change the equity that was gifted to Stephanie from separate to marital property. The $57,800 in equity that existed after the addition was built on the house is Stephanie's separate property as this ownership interest in the house is easily traceable to the gift that Stephanie received from Matthews. As this is Stephanie's separate property, Chad is not entitled to one half of the $57,800 that remained from Matthews's gift to Stephanie.

{¶37} However, since Chad used marital funds to pay down the mortgage balance on the house, the $6,501.66 increase in equity that accrued in between July of 2012—which is the month in which Stephanie obtained the $112,200 loan—and the time of the divorce is marital property. Ex. 20. As this is marital property, Chad should have been awarded one half of this amount, which is $3,250.83. In failing to classify this portion of the equity as marital property, the trial court made a ruling that was against the manifest weight of the evidence as both sides admitted that it was marital monies that accounted for this increase. In turn, the failure to divide this sum equally between the parties to this action constitutes an abuse of discretion. For these reasons, Chad's fourth assignment of error is sustained.

*Conclusion*

**{¶38}** Having found no error prejudicial to the appellant in the particulars assigned and argued in the first, second, and third assignments of error, the judgment of the Family Division of the Court of Common Pleas of Marion County is affirmed as to these issues. Having found error prejudicial to the appellant in the particulars assigned and argued in the fourth assignment of error, the judgment of the Family Division of the Court of Common Pleas of Marion County is reversed in part and affirmed in part.

*Judgment Affirmed in Part*
*Reversed in Part*
*And Cause Remanded*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**