[Cite as *Kesler v. Kesler*, 2018-Ohio-5059.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## PAULDING COUNTY

PATRICIA KESLER,

      PLAINTIFF-APPELLANT,

      v.

DAVID KESLER,

      DEFENDANT-APPELLEE.

CASE NO. 11-18-04

O P I N I O N

Appeal from Paulding County Common Pleas Court
Trial Court No. DIV-16-150

Judgment Affirmed

Date of Decision:  December 17, 2018

APPEARANCES:

    *Timothy C. Holtsberry* for Appellant

    *Glenn H. Troth* for Appellee

**WILLAMOWSKI, P.J.**

{¶1} Defendant-appellant Patricia J. Kesler ("Patricia") appeals the judgment of the Paulding County Court of Common Pleas, alleging that the trial court did not properly classify the marital residence as marital property. For the reasons set forth below, the judgment of the trial court is affirmed.

*Facts and Procedural History*

{¶2} Patricia and David G. Kesler ("David") were married on January 7, 2001. Tr. 7. In 2010, David's father, John Kesler ("John") died. Tr. 59. Ex. 2. In 1991, John put his assets into an inter vivos trust. Ex. 1. Prior to his death, John had operated Kesler Farms, employing David and three of David's siblings in this farming business. Tr. 25, 41. All four of John's children were beneficiaries of his inter vivos trust. Ex. 2. Several months before John died, he entered into an agreement with David's two brothers to transfer an interest in Kesler Farms to their limited liability company in exchange for payments from the limited liability company. This gave David's two brothers control over the operations of Kesler Farms. Tr. 85. David's employment at the farm was terminated shortly after John's death. Tr. 38.

{¶3} Subsequently, a dispute between David and his two brothers arose over assets in John's inter vivos trust. Tr. 46-47. In the end, David entered into an agreement settling the distribution of the estate of John Kesler and the inter vivos trust ("settlement agreement"). Ex. 2. This settlement agreement was signed by all

those with claims under the trust and against John's estate as well as by the trustee of the trust and the fiduciary of the estate. Ex. 2. Under the settlement agreement, David was to "receive a distribution of twenty-five percent of the Trust assets." Ex. 2. David's brothers borrowed money to pay David the $519,120.00 that he was owed under the settlement agreement. Tr. 41. Ex. 2. David received this sum in the form of a cashier's check that was payable only to him. Tr. 70, 88. He kept this cashier's check in a safe and never deposited the full amount of this check into a bank account. Tr. 88, 70. Rather, when he wanted to make a purchase, he would present this cashier's check to his bank, have the amount he wanted to spend deposited into his account, and then have a new cashier's check issued to him for the reduced remaining balance. Tr. 69-70.

{¶4} On May 18, 2011, Patricia and David purchased a house for $171,000.00. Doc. 37. Tr. 10. Ex. B. To pay for the house, David presented his cashier's check from First Federal Bank and had $172,000.00 deposited into his joint checking account. Tr. 68-69. Ex. A. These funds were then transferred to Huntington Bank to pay for the house in full. Tr. 68. Ex. B, G. Patricia's name was included on the deed to the house. Tr. 57. On May 8, 2014, David took out a $30,725.00 loan on the marital residence in both of their names. Ex. C. On January 9, 2017, the marital residence was sold for $176,000.00. Tr. 52. Ex. E. After the loan and the closing costs were paid off, the proceeds of the sale were $136,574.58. Tr. 9.

{¶5} On October 20, 2016, Patricia filed for a divorce. Doc. 1. At the divorce hearing, the primary issue was whether the proceeds from the sale of the marital residence were marital or separate property. Doc. 43. David argued that these funds were proceeds from his father's estate and were part of his inheritance from his father. Doc. 40. Patricia asserted that the funds used to purchase the marital residence were not proceeds from an inheritance. Doc. 42. Rather, she stated that these funds should be characterized as the proceeds of the sale of David's share in his father's company. Tr. 41.

{¶6} The trial court found that the evidence in the record did not support Patricia's assertion and found that the funds used to purchase the marital residence were the proceeds of David's inheritance from his father. Doc. 43.[1] The trial court then found that David had carried the burden of tracing the funds used to purchase the marital residence back to his inheritance and awarded the disputed proceeds from the sale of the marital residence to David as his separate property. Doc. 43. Patricia filed her notice of appeal on April 16, 2018. Doc. 44. On appeal, Patricia raises the following assignments of error:

**First Assignment of Error**

**The trial court erred in not following the requirements of R.C. 3105.171 in determining that the marital home was not marital property.**

---

[1] After the divorce hearing, the parties mutually agreed that David should receive one-half of the proceeds of the sale of the marital residence, which amounted to $68,287.29. Doc. 43. Thus, the judgment entry only addressed the half of the proceeds from the sale that remained in controversy. Doc. 43.

**Second Assignment of Error**

**The finding of the trial court in determining the marital home separate property is against the manifest weight of the evidence.**

We will address both of these assignments of error in one analysis.

*First and Second Assignments of Error*

{¶7} Patricia argues that David did not carry the burden of establishing that the marital residence was separate property and that the trial court's classification of the marital residence as David's separate property was against the manifest weight of the evidence. If this Court determines that the marital residence was purchased with the traceable proceeds of David's inheritance and that the marital residence was, therefore, David's separate property, Patricia alternatively argues that her efforts to improve the marital residence contributed to a $5,000.00 increase in the value of the house. Patricia asserts that this sum is marital property.

*Legal Standard*

{¶8} In a divorce proceeding, trial courts classify the assets of the parties as marital or separate. *Brandon v. Brandon*, 3d Dist. Mercer No. 10-08-13, 2009-Ohio-3818, ¶ 11. The separate property is retained by the party who obtained that particular asset regardless of whether the separate property was acquired before or during the marriage. R.C. 3105.171(D). Separate property includes "an inheritance by one spouse by bequest, devise, or descent during the course of the marriage." R.C. 3105.171(A)(6)(a)(i). If separate property is commingled with marital

property, the separate property does not become marital property unless "the separate property is not traceable." R.C. 3105.171(A)(6)(b).

{¶9} Generally, "the party seeking to establish an asset as separate property * * * has the burden of proof, by a preponderance of the evidence, to trace the asset to separate property." *Strasburg v. Strasburg,* 3d Dist. Auglaize No. 2-10-12, 2010-Ohio-3672, ¶ 20, quoting *Gallo v. Gallo*, 11th Dist. Lake No. 2000-L-208, 2002-Ohio-2815, ¶ 25. "A 'preponderance of the evidence means the greater weight of the evidence that is necessary to destroy the equilibrium.'" *Golan-Elliot v. Elliot*, 3d Dist. Union No. 14-17-01, 2017-Ohio-8524, ¶ 53, quoting *Reed v. Reed*, 3rd Dist. Allen No. 1-09-63, 2010-Ohio-4550, ¶ 10. "[T]he holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." R.C. 3105.171(H). "Appellate courts '[review] the trial court's classification of property as marital or separate property under a manifest weight of the evidence standard.'" *Worden v. Worden*, 3d Dist. Marion No. 9-16-54, 2017-Ohio-8019, ¶ 17, quoting *Neville v. Neville*, 3d Dist. Marion No. 9-08-37, 2009-Ohio-3817, ¶ 9.

*Legal Analysis*

{¶10} In this case, the trial court found that the $519,120.00 cashier's check was comprised of the proceeds of David's inheritance from his father. Doc. 43. The record shows that this check came pursuant to the 2011 settlement agreement that governed the distribution of John's estate and inter vivos trust assets. Tr. 26. Ex.

2. This settlement agreement was entered into for the purpose of resolving a dispute over the disposition of John's assets and represented the value of one quarter of the assets in John's inter vivos trust. Ex. 2. Deborah testified at the hearing that these funds came from John's estate. Tr. 60. Ex. 2.

{¶11} On appeal, Patricia characterizes the settlement agreement as a "buyout" of David's share of the family farm. Thus, Patricia argues that the funds dispersed under the settlement agreement were income and were, therefore, not an inheritance. However, the fact that funds at issue were dispersed pursuant to a settlement agreement does not mean that the funds were not an inheritance. The trial court found that Patricia's assertion that this check was a "buyout" of David's interest in the family farm was not substantiated by other evidence.[2] Tr. 41. Doc. 43. We find that the trial court's analysis was sufficient to support its determination that the funds in the cashier's check were David's inheritance and, therefore, his separate property.

{¶12} As to the traceability of the funds, David testified that he presented a First Federal Bank cashier's check to Huntington National Bank in order to pay for the house in cash. Tr. 27. He testified that these funds were proceeds from the cashier's check he received under the settlement agreement of John's estate and inter vivos trust. Tr. 26-27. To substantiate his testimony, David introduced a copy

---

[2] Even if the dispersal of these funds is properly characterized as a "buyout," the fact remains that this was a purchase from David of his inheritance assets, which means these proceeds are still traceable to David's inheritance.

of this cashier's check into evidence and a copy of the bank statement from First Federal Bank, which showed the corresponding deposit and withdrawal of funds from his checking account. Ex. A. Thus, the trial court's classification was also not against the manifest weight of the evidence as some competent, credible evidence supports the finding that the funds used to purchase the marital residence were traceable to David's inheritance.

{¶13} Alternatively, Patricia points to the fact that the house was purchased for roughly $171,000.00 and was sold for roughly $176,000.00.[3] She argues that this $5,000.00 increase was active appreciation and was, therefore, marital property. Under R.C. 3105.171(A)(3)(a)(iii), marital property includes "all income and appreciation on separate property, due to the labor, monetary, or in-kind contribution of either or both of the spouses that occurred during the marriage." R.C. 3105.171(A)(3)(a)(iii). "An increase in value resulting from the contributions of either spouse is referred to as active appreciation." *Worden, supra*, at ¶ 24. "Appreciation of separate property due solely to market forces, such as location and inflation, is passive appreciation * * *." *Colley v. Colley*, 10th Dist. Franklin No. 09AP-333, 09AP-335, and 09AP-336, 2009-Ohio-6776, ¶ 19, citing *Sterbenz v. Sterbenz*, 9th Dist. Summit No. 21865, 2004-Ohio-4577, ¶ 5. "Passive appreciation value remains separate property." *Neville v. Neville*, 3d Dist. Marion No. 9-08-37,

---

[3] In Patricia's brief, she states that the house was purchased for $169,000.00 and sold for $176,000.00, marking an appreciation of $7,000.00. The facts in the record, however, indicate that the purchase price was roughly $171,000.00 and the sale price was roughly $176,000.00. Ex. B, E.

2009-Ohio-3817, ¶ 22.  An increase in value due to active appreciation, on the other hand, is marital property.  *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401, 696 N.E.2d 575, 578 (1998).

{¶14} At the divorce proceeding, Patricia testified that she mowed the yard, painted, cleaned the house, and installed fixtures.  Tr. 32.  Patricia's daughter also testified that Patricia did work on the property, such as painting, cleaning, and ordering appliances.  Tr. 18.  The trial court, however, found that the increase in the marital residence's value was passive appreciation because Patricia did not establish that her work contributed to the $5,000.00 increase in value.  Doc. 43.  *See Gibson v. Gibson*, 3d Dist. Marion No. 9-07-06, 2007-Ohio-6965, ¶ 38.  After reviewing the record, we find that the trial court's classification of this $5,000.00 sum as David's separate property was supported by some competent, credible evidence. For these reasons, Patricia's first and second assignments of error are overruled.

*Conclusion*

{¶15} Having found no error prejudicial to the appellant in the particulars assigned and argued, the judgment of the Paulding County Court of Common Pleas is affirmed.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/hls**